UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- v. -<br><br>BRADLEY HEPPNER,<br><br>                  Defendant. | 25 Cr. 503 (JSR) |

**MOTION FOR A RULING THAT DOCUMENTS THE DEFENDANT GENERATED
THROUGH AN ARTIFICIAL INTELLIGENCE TOOL ARE NOT PRIVILEGED**

 

JAY CLAYTON
United States Attorney for the
Southern District of New York
Attorney for the United States of America

Daniel G. Nessim
Alexandra N. Rothman
Assistant United States Attorneys
   *- Of Counsel -*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii
PRELIMINARY STATEMENT ............................................................................................... 1
BACKGROUND ........................................................................................................................ 2
    A. The Charged Conduct ..................................................................................................... 2
    B. The AI Documents ......................................................................................................... 3
APPLICABLE LAW .................................................................................................................. 5
    A. Attorney-Client Privilege ................................................................................................ 5
    B. Work Product Doctrine ................................................................................................... 6
ARGUMENT .............................................................................................................................. 6
  I. The Defendant Has Not Met His Burden in Establishing Privilege Over the AI
    Documents ............................................................................................................................ 6
    A. The AI Documents Are Not Protected by the Attorney-Client Privilege ...................... 7
    B. The AI Documents Are Not Protected by the Work Product Privilege ........................ 11
CONCLUSION ......................................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**                                                                                                         **Page(s)**

*Calvin Klein Trademark Tr. v. Wachner*,
  198 F.R.D. 53 (S.D.N.Y. 2000) ................................................................................................ 5

*Gould Inc. v. Mistui Min. & Smelting Co., Ltd.*,
  825 F.2d 676 (2d Cir. 1987) .................................................................................................... 6

*In re Aenergy, S.A.*,
  451 F. Supp. 3d 319 (S.D.N.Y. 2020) ..................................................................................... 9

*In re Cty. of Erie v. Cty. of Erie*,
  473 F.3d 413 (2d Cir. 2007) .................................................................................................... 4

*In re Grand Jury Subpoenas Dated Mar. 19, 2002 and Aug. 2, 2002*,
  318 F.3d 379 (2d Cir. 2003) ........................................................................................... 5, 6, 11

*In re OpenAI, Inc., Copyright Infringement Litig.*,
  802 F. Supp. 3d 688 (S.D.N.Y. 2025) ..................................................................................... 7

*In re OpenAI, Inc., Copyright Infringement Litig.*,
  No. 25-md-3143 (SHS) (S.D.N.Y. Jan. 5, 2026) (Dkt. 1021) ................................................. 8

*In re Richard Roe, Inc.*,
  68 F.3d 38 (2d Cir. 1995) ........................................................................................................ 8

*In re Six Grand Jury Witnesses*,
  979 F.2d 939 (2d Cir. 1992) ............................................................................................... 5, 10

*In re von Bulow*,
  828 F.2d 94 (2d Cir. 1987) ................................................................................................. 9, 10

*United States v. Ackert*,
  169 F.3d 136 (2d Cir. 1999) .................................................................................................... 7

*United States v. Adlman*,
  134 F.3d 1194 (2d Cir. 1998) .............................................................................................. 6, 11

*United States v. Buyer*,
  No. 22 Cr. 397 (RMB), 2023 WL 1381970 (S.D.N.Y. Jan. 31, 2023) ................................ 9, 11

*United States v. Correia*,
  468 F. Supp. 3d 618 (S.D.N.Y. 2020) ....................................................................... 5, 9, 10, 11

*United States v. DeFonte*,
   441 F.3d 92 (2d Cir. 2006) .................................................................................................. 10

*United States v. Finazzo*,
   682 F. App'x 6 (2d Cir. 2017) ............................................................................................... 9

*United States v. Kovel*,
   262 F.2d 918 (2d Cir. 1961) .................................................................................................. 7

*United States v. Mejia*,
   655 F.3d 126 (2d Cir. 2011) ............................................................................................. 4, 5

*Valassis Commc'ns, Inc. v. News Corp.*,
   No. 17 Civ. 7378 (PKC), 2018 WL 4489285 (S.D.N.Y. Sept. 19, 2018) ................................ 9

**Other Authorities**

Ira P. Robbins, *Against an AI Privilege,* Harv. J. L. & Tech. Dig. (Nov. 7, 2025),
   https://jolt.law.harvard.edu/digest/against-an-ai-privilege. ............................................... 9

**PRELIMINARY STATEMENT**

The Government respectfully moves this Court for a ruling that approximately thirty-one documents the defendant Bradley Heppner generated through a commercial artificial intelligence tool (the "AI Documents") are neither protected by the attorney-client privilege nor shielded by the work product doctrine. The defendant created these documents before his arrest by inputting queries into a third-party AI platform. He later shared them with his defense counsel. For three independent reasons, no privilege attaches.

First, the AI Documents fail every element of the attorney-client privilege. They are not communications between a client and attorney—the AI tool is plainly not an attorney, and no attorney was involved when he created the documents. They were not made for the purpose of obtaining legal advice—the AI platform's terms of service expressly disclaim any attorney-client relationship and state that the tool does not provide legal advice. And they are not confidential—the defendant voluntarily shared his queries with the AI tool, and the AI responses were generated from a third-party commercial platform whose privacy policy permits disclosure to governmental authorities.

Second, the defendant cannot retroactively cloak unprivileged documents with privilege by later transmitting them to counsel. Well-settled law holds that preexisting, non-privileged materials do not become privileged merely because a client eventually shares them with an attorney.

Third, the work product doctrine does not protect these materials. Defense counsel has represented that the defendant created the AI Documents on his own initiative—not at counsel's behest or direction. The doctrine shields materials prepared by or for a party's attorney or representative; it does not protect a layperson's independent internet research.

The defendant bears the burden of demonstrating that these materials are subject to the attorney-client or work-product privileges. He cannot meet it here. The Court should rule that the AI Documents are not privileged and authorize the Government to access the materials in advance of trial.

## BACKGROUND

### A. The Charged Conduct

On October 28, 2025, a grand jury in this District returned Indictment 25 Cr. 503 (JSR) (the "Indictment"), charging the defendant in five counts with securities fraud, wire fraud, conspiracy to commit securities and wire fraud, making false statements to auditors, and falsification of records. (Dkt. 3). The Indictment alleges a scheme to defraud investors in connection with Beneficient, a financial services company the defendant founded and controlled as CEO.

As alleged in the Indictment, and the Government expects to prove at trial, the defendant made, and caused to be made, misrepresentations and omissions to investors and potential investors in Beneficient concerning a debt that Beneficient owed to a purported lender, Highland Consolidated Limited Partnership ("HCLP") and its subsidiaries. Among other things, the defendant falsely described HCLP as an independent, arms' length lender that was primarily associated with a wealthy family, and represented that his ability and his family's ability to access HCLP funds was minimal. In reality, however, HCLP was an entity created by the defendant for his personal benefit, and the defendant controlled HCLP's actions and directly benefited when funds were transferred to it.

As part of this scheme, the defendant directed misrepresentations and omissions to a special committee of the Board of Directors of GWG, a public company for which the defendant served

2

as Chairman of the Board. The defendant ultimately stole approximately $300 million from GWG. Over time, Beneficient and GWG became intertwined companies, such that a default by Beneficient on the debt owed to HCLP would negatively affect both entities. At the request of the defendant, a special committee of the GWG Board repeatedly approved payments from GWG to Beneficient purportedly to pay off the HCLP debt. Unbeknownst to the GWG special committee, however, the defendant personally received more than $150 million of these GWG funds. The defendant used this money to fund his lifestyle, including the payment of more than $40 million to renovate and furnish his Dallas mansion and more than $10 million for his personal credit card and private air travel expenses.

### B. The AI Documents

On November 4, 2025, the defendant was arrested at his Dallas mansion. At the time of his arrest, agents with the Federal Bureau of Investigation executed a search warrant at the mansion and seized hard copy records and dozens of electronic devices (the "Seized Materials").

Shortly after the search, defense counsel informed the Government that, before his arrest, the defendant had run queries related to the Government's investigation through an AI tool (Claude) created by a third-party company, Anthropic. Defense counsel further informed the Government that documents generated by the AI tool reflecting Heppner's prompts and the AI tool's responses (that is, the AI Documents) would be located on the electronic devices that the Government had seized during the search. To date, defense counsel has identified approximately thirty-one documents in the Seized Materials which comprise the AI Documents. Counsel has asserted that such documents are privileged. At the request of defense counsel, in an abundance of caution, and pursuant to a Privilege Protocol Stipulation (the "Privilege Protocol"), which the parties signed on December 11, 2025, the Government agreed to segregate the AI Documents from

3

the prosecution team pending resolution of the privilege question. (*See* Declaration of Alexandra N. Rothman ("Rothman Decl.") Ex. A).[1] Defense counsel has subsequently provided the Government with privilege logs that identify certain of the AI Documents over which counsel has claimed privilege. (Rothman Decl. Exs. B, C).

The Government has continued to engage with defense counsel on the AI Documents. In doing so, defense counsel informed the Government that the defendant included as inputs for the AI Documents, among other things, information the defendant learned from his counsel. (Rothman Decl. Ex. E). Defense counsel further informed the Government that the defendant created the AI Documents for the "express purpose of talking to counsel" and obtaining his counsel's "legal advice," and that the defendant did, in fact, share the AI Documents with his counsel. (Rothman Decl. Exs. D, E). However, defense counsel has not claimed that the defendant used the AI tool or prepared the AI Documents at counsel's direction. (*See* Rothman Decl. Ex. E ("[counsel] did not direct [the defendant] to run Claude searches")). Nor has counsel claimed any other involvement in the creation of the AI Documents.

Trial is set to begin on April 6, 2026, and the parties have agreed to pretrial exchanges of materials, including for the Government to produce its preliminary set of exhibits on March 9, 2026. In order to prepare and potentially mark certain AI Documents as exhibits, the Government respectfully seeks a ruling on this privilege issue.

---

[1] The Privilege Protocol provided, among other things, "[t]he Government does not concede that materials segregated pursuant to the Privilege Protocol are privileged and reserves its right to litigate whether an applicable privilege properly attaches to those materials. The Government also does not concede that materials identified by the defense as privileged are privileged and reserves its right to litigate whether an applicable privilege properly attaches to those materials." (Rothman Decl. Ex. A ¶ 6).

4

## APPLICABLE LAW

### A. Attorney-Client Privilege

The attorney-client privilege "protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). For the privilege to attach, the "predominant purpose of the communication" must be "to render or solicit legal advice." *In re Cty. of Erie v. Cty. of Erie*, 473 F.3d 413, 420 (2d Cir. 2007). The privilege "may be invoked to hold secret *only* those communications made in confidence to a lawyer to obtain legal counsel that would not have been made without the existence of the privilege." *In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir. 1992) (emphasis added). The privilege "must be narrowly construed" because it "stands in derogation of the search for truth so essential to the effective operation of any system of justice." *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000).

"[T]he party invoking a privilege bears the burden of establishing its applicability," and the "burden is a heavy one," in light of the "fundamental maxim . . . that the public has a right to every man's evidence." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 and Aug. 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003). Critically, "because the attorney-client privilege stands in derogation of the search for truth so essential to the effective operation of any system of justice it must be narrowly construed." *United States v. Correia*, 468 F. Supp. 3d 618, 621 (S.D.N.Y. 2020) (internal quotation marks, alterations, and citation omitted); *see also Mejia*, 655 F.3d at 132 (courts are to "apply the privilege only where necessary to achieve its purpose and construe the privilege narrowly because it renders relevant information undiscoverable"); *In re Six Grand Jury Witnesses*, 979 F.2d at 943 (the privilege stands as an "exception to the testimonial compulsion for

5

every witness' evidence," and "[g]enerally, all relevant proof is essential [for a] complete trial record" and for "confidence in the fair administration of justice").

### B. Work Product Doctrine

The work product doctrine, which is distinct from the attorney-client privilege, "provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoenas*, 318 F.3d at 383. "It is well established that the work-product privilege does not apply to documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998). Work-product protection does not "shield . . . materials in an attorney's possession that were prepared neither by the attorney nor his agents." *In re Grand Jury Subpoenas*, 318 F.3d at 384. And although a "narrow exception" to this principle exists where the material in question has been selected and compiled in such a way that "the party asserting the privilege . . . show[s] 'a real, rather than speculative, concern' that counsel's thought processes 'in relation to pending or anticipated litigation' will be exposed through disclosure of the compiled documents," "[n]ot every selection and compilation of third-party documents . . . transforms that material into attorney work product." *In re Grand Jury Subpoenas*, 318 F.3d at 386 (quoting *Gould Inc. v. Mistui Min. & Smelting Co., Ltd.*, 825 F.2d 676, 680 (2d Cir. 1987)).

## ARGUMENT

### I. The Defendant Has Not Met His Burden in Establishing Privilege Over the AI Documents

The defendant has not come close to satisfying his burden in establishing that the AI Documents are privileged. The defendant appears to have directed legal and factual prompts at an AI tool, not his attorneys. Defense counsel has informed the Government that, once the defendant obtained responses to his AI prompts, he transmitted those responses to counsel. But that act of

transmission does not transform the defendant's non-privileged use of an AI tool into a privileged communication shielded from disclosure. The AI Documents do not satisfy the stringent requirements of the privilege, and the defendant has certainly not met his burden in establishing the privilege applies.

### A. The AI Documents Are Not Protected by the Attorney-Client Privilege

The AI-generated documents fail each element of the attorney-client privilege. They are not communications between the defendant and an attorney. They were not made for the purpose of obtaining legal advice. And they are not confidential. Each deficiency independently defeats the defendant's privilege claim.

First, the AI Documents are not protected by the attorney-client privilege because they are not communications between the defendant and counsel. The AI tool is obviously not an attorney. And, outside of certain narrow exceptions not relevant here, *see United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961), the attorney-client privilege does not attach to non-attorney communications. The defendant's use of the AI tool here is no different than if he had asked friends for their input on his legal situation. But it is well-settled that discussing legal matters with non-attorneys does not imbue those communications with the attorney-client privilege. *See, e.g.*, *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999) ("To that end, the privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client."); *In re OpenAI, Inc., Copyright Infringement Litig.*, 802 F. Supp. 3d 688, 699 (S.D.N.Y. 2025) ("In the absence of an attorney-client relationship, the discussion of legal issues between two non-attorneys is not protected by attorney-client privilege.").

7

The attorney-client privilege reflects a policy balance that requires the presence and involvement of licensed attorneys. The AI tool that the defendant used has no law degree and is not a member of the bar. It owes no duties of loyalty and confidentiality to its users. It owes no professional duties to courts, regulatory bodies, and professional organizations. The policy balance embodied by the attorney-client privilege cannot be mapped onto a machine that provides what may resemble legal advice. *See* Ira P. Robbins, *Against an AI Privilege,* Harv. J. L. & Tech. Dig. (Nov. 7, 2025), https://jolt.law.harvard.edu/digest/against-an-ai-privilege.

Second, the AI Documents are not protected by the attorney-client privilege because they were not created for the purpose of obtaining legal advice from professional legal advisers. Anthropic's public materials, including its "Constitution" which was in effect at the time of the defendant's searches, indicates that one of the principles Claude follows is choosing the "response that least gives the impression of giving specific legal advice" and "instead suggest[s] asking a lawyer." *See* Anthropic, *Claude's Constitution* (May 9, 2023), http://www.anthropic.com/news/claudes-constitution. Additionally, if asked about giving "legal advice," Claude states, in substance, that it cannot give legal advice and that a user should consult with a "qualified attorney." (Rothman Decl. Ex. F). Under these circumstances, the defendant cannot credibly claim that he used an AI tool for the purpose of obtaining legal advice when the tool itself explicitly disclaims that use.

Third, the AI Documents are not protected by the attorney-client privilege because they are not confidential. *See, e.g.*, *In re Richard Roe, Inc.*, 68 F.3d 38, 39 (2d Cir. 1995) (communications must be "made in confidence"). The defendant chose to share his prompts with an AI tool created by a third-party company that is publicly accessible. He further chose to receive AI-generated responses drawing upon a wide range of underlying sources. And this was not a mystery to the

8

defendant: Anthropic explicitly advises its users in its Privacy Policy, which was in effect at the time of the defendant's searches, that it collects data on the "prompts" entered and "outputs" generated; that it uses this data to "train" its AI tool; and that it may disclose this data to "governmental regulatory authorities" and "third parties." *See* Anthropic, *Privacy Policy* (Feb. 19, 2025), http://www.anthropic.com/legal/archive/a2eecf43-807a-4a53-89dd-04c44c351138. For these reasons, users have a diminished privacy interest in "conversations with [an AI tool] which users voluntarily disclosed to [an AI company] and which [the AI company] retains in the normal course of business." *In re OpenAI, Inc., Copyright Infringement Litig.*, No. 25-md-3143 (SHS) (S.D.N.Y. Jan. 5, 2026) (Dkt. 1021 at 3); *see also United States v. Finazzo*, 682 F. App'x 6, 16 (2d Cir. 2017) (holding that privilege can be waived where a client communicated with his attorney over a work email account that was subject to monitoring and over which there was no expectation of privacy).[2]

Fourth, that the defendant later transmitted the AI Documents to counsel does not create a shield of attorney-client privilege for the underlying AI Documents. *See United States v. Buyer*, No. 22 Cr. 397 (RMB), 2023 WL 1381970, at *1 (S.D.N.Y. Jan. 31, 2023) ("sending preexisting documents to counsel does not confer attorney-client privilege"); *Correia*, 468 F. Supp. 3d at 622 ("[T]he mere transmittal of non-privileged documents [to an attorney] is not a privileged communication."); *Valassis Commc'ns, Inc. v. News Corp.*, No. 17 Civ. 7378 (PKC), 2018 WL 4489285, at *2 (S.D.N.Y. Sept. 19, 2018) ("The attorney-client privilege does not extend

---

[2] To the extent the information the defendant shared with the AI tool stemmed from confidential communications with his counsel, the defendant waived any such privilege that may have attached to those communications by sharing it with a third party. *See In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987) (holding it is "the client's responsibility to ensure that privileged information remains confidential").

9

to preexisting documents that a client sends to the client's lawyer."); *In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 324 (S.D.N.Y. 2020) (no attorney-client privilege over string of emails between non-legal employees where counsel was merely copied and did not contribute). The defendant's act of sending his AI searches to counsel, after the fact, does not make his original AI searches privileged.[3]

Certainly, any advice the defendant's attorneys offered, including that offered in response to the AI Documents, would be presumptively privileged. But there is no basis to extend the privilege back to the information contained in the underlying AI Documents. *See In re Six Grand Jury Witnesses*, 979 F.2d at 945 (holding that "[a]lthough an attorney-client communication is privileged and may not be divulged, the underlying information or substance of the communication is not") (citation omitted)). Doing so would contravene the command that the privilege must be "narrowly construed" as it "stands in derogation of the search of truth so essential to the effective operation of any system of justice." *Correia*, 468 F. Supp. 3d at 621.[4]

For these reasons, the defendant cannot meet his burden of establishing that the AI Documents are protected by the attorney-client privilege.

---

[3] Likewise, if the defendant had instead conducted Google searches or checked out certain books from the library to assist with his legal case, the underlying searches or library records would not be protected from disclosure simply because the defendant later discussed what he learned with his attorney.

[4] The AI Documents are unlike a client's confidential notes, which may be privileged if they (1) memorialize privileged conversations with an attorney or (2) organize a client's thoughts for communication to an attorney and the substance of the notes are actually communicated to an attorney. *United States v. DeFonte*, 441 F.3d 92, 95-97 (2d Cir. 2006). In those cases, the notes themselves reflect confidential communications with an attorney, or confidential thoughts intended to be shared with an attorney. Here, the AI Documents are non-confidential communications with a non-attorney AI software. Only after this AI analysis was complete did the defendant share the AI output with his attorneys. Privilege should not attach here because "[a] rule that recognizes a privilege for any writing made with an eye toward legal representation would be too broad." *Id.* at 96.

### B. The AI Documents Are Not Protected by the Work Product Privilege

The defendant also cannot meet his burden to claim work-product protection over the AI Documents. "The attorney work product doctrine . . . provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoenas*, 318 F.3d at 383. But, as defense counsel has conceded in its discussions with the Government, the defendant's AI-research was not prepared at the *behest* of anyone, including counsel. Rather, as the Government understands, the defendant took these actions himself—without any direction from counsel—and then shared the products of his research with counsel after it was created. The work product privilege does not "shield . . . materials in an attorney's possession that were prepared neither by the attorney nor his agents." *Id.* at 384.

Where, as here, the defendant acted alone and then transmitted the materials to his counsel, the fruits of the defendant's actions are not attorney work product. *See Buyer*, 2023 WL 1381970, at *2; *Correia*, 468 F. Supp. 3d at 623. Had counsel directed the defendant to run the AI searches, the analysis might be different. But the defendant elected to run his own AI searches and then shared the outputs of those searches with counsel. The policy interests underlying the work-product doctrine—to "preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategies 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries," *Adlman,* 134 F.3d at 1196—simply do not apply.

The AI Documents do not fall within the work product privilege and should be disclosed.

## **CONCLUSION**

For the reasons set forth above, the Government respectfully requests that the Court issue a ruling that the AI Documents are not privileged and authorize the prosecution team to access the materials in advance of trial.

Dated: New York, New York
February 6, 2026

                        Respectfully submitted,

                        JAY CLAYTON
                        United States Attorney

By:   */s/ Alexandra Rothman*
                        Daniel G. Nessim
                        Alexandra N. Rothman
                        Assistant United States Attorneys
                        26 Federal Plaza
                        New York, New York 10278
                        Telephone: (212) 637-2486 /-2580