# EXHIBIT A

10-K 1 f10k2018_gwgholdings.htm ANNUAL REPORT

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, DC 20549

**FORM 10-K**

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
For the fiscal year ended December 31, 2018

or

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES ACT OF 1934**
For the transition period from _____ to _____
**Commission File Number: 001-36615**

# GWG HOLDINGS, INC.
(Exact name of registrant as specified in its charter)

| Delaware | 26-2222607 |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

**220 South Sixth Street, Suite 1200**
**Minneapolis, MN 55402**
(Address of principal executive offices, including zip code)

**(612) 746-1944**
(Registrant's telephone number, including area code)

**Securities registered pursuant to Section 12(b) of the Act:**

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| Common Stock | GWGH | NASDAQ Capital Market |

**Securities registered pursuant to Section 12(g) of the Act**
None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☐ No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or 15(d) of the Act. Yes ☐ No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☐ No ☒

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). Yes ☒ No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| Large accelerated filer | ☐ | Accelerated filer | ☐ |
|---|---|---|---|

Confidential Treatment Requested by Deloitte                                            D00025582
Confidential Treatment Requested by Deloitte & Touche LLP                               D_DOJ-0018793
                                                                                        USAO_REL_01_03161213

| | | | |
|---|---|---|---|
| Non-accelerated filer | ☐ | Smaller reporting company | ☒ |
| | | Emerging growth company | ☐ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes ☐ No ☒

The aggregate market value of the registrant's common stock held by non-affiliates was $11,692,802 as of June 29, 2018 (the last business day of the registrant's most recently completed second fiscal quarter), based on a total of 1,522,500 shares of common stock held by non-affiliates and a closing price of $7.68 as reported on the Nasdaq Capital Market on June 29, 2018. For purposes of this computation, all officers, directors, and 10% beneficial owners of the registrant are deemed to be affiliates. Such determination should not be deemed to be an admission that such officers, directors or 10% beneficial owners, are, in fact, affiliates of the registrant.

As of June 30, 2019, GWG Holdings, Inc. had 33,033,420 shares of common stock outstanding.

**DOCUMENTS INCORPORATED BY REFERENCE:**

None.

Confidential Treatment Requested by Deloitte                                          D00025583
Confidential Treatment Requested by Deloitte & Touche LLP                              D_DOJ-0018794
                                                                                       USAO_REL_01_03161214

# GWG HOLDINGS, INC.

## Index to Form 10-K
## for the Fiscal Year Ended December 31, 2018

| | | |
|---|---|---|
| **PART I** | | 1 |
| ITEM 1. | Business. | 1 |
| ITEM 1A. | Risk factors. | 12 |
| ITEM 1B. | Unresolved staff comments. | 40 |
| ITEM 2. | Properties. | 40 |
| ITEM 3. | Legal proceedings. | 40 |
| ITEM 4. | Mine safety disclosures. | 40 |
| **PART II** | | 41 |
| ITEM 5. | Market for the registrant's common equity, related shareholder matters and issuer purchases of equity securities. | 41 |
| ITEM 6. | Selected financial data. | 41 |
| ITEM 7. | Management's discussion and analysis of financial condition and results of operations. | 41 |
| ITEM 7A. | Quantitative and qualitative disclosures about market risk. | 61 |
| ITEM 8. | Consolidated financial statements and supplementary data. | F-1 |
| ITEM 9. | Changes in and disagreements with accountants on accounting and financial disclosure. | 62 |
| ITEM 9A. | Controls and procedures. | 62 |
| **PART III** | | 65 |
| ITEM 10. | Directors, executive officers and corporate governance. | 65 |
| ITEM 11. | Executive compensation. | 72 |
| ITEM 12. | Security ownership of certain beneficial owners and management and related shareholder matters. | 77 |
| ITEM 13. | Certain relationships and related transactions, and director independence. | 79 |
| ITEM 14. | Principal accounting fees and services. | 82 |
| **PART IV** | | 83 |
| ITEM 15. | Exhibits, financial statement schedules. | 83 |
| ITEM 16. | FORM 10-K SUMMARY | 85 |
| **SIGNATURES** | | 86 |

i

Confidential Treatment Requested by Deloitte                              D00025584
Confidential Treatment Requested by Deloitte & Touche LLP                 D_DOJ-0018795
                                                                          USAO_REL_01_03161215

### ITEM 9. CHANGES IN AND DISAGREEMENTS WITH ACCOUNTANTS ON ACCOUNTING AND FINANCIAL DISCLOSURE.

There have been no changes in or disagreements with accountants on accounting and financial disclosure.

### ITEM 9A. CONTROLS AND PROCEDURES.

**Evaluation of Disclosure Controls and Procedures**

We maintain disclosure controls and procedures designed to provide reasonable assurance that information required to be disclosed in our reports filed pursuant to the Securities Exchange Act of 1934 is recorded, processed, summarized, and reported within the time periods specified in the SEC's rules and forms, and that such information is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosure. A control system, no matter how well conceived and operated, can provide only reasonable, not absolute, assurance the objectives of the control system are met.

As of December 31, 2018, our Chief Executive Officer and Chief Financial Officer carried out an evaluation of the effectiveness of our disclosure controls and procedures as such term is defined in Rule 13a-15(e) under the Securities and Exchange Act of 1934, as of the end of the period covered by this report. Our Chief Executive Officer and Chief Financial Officer concluded that, as a result of the material weakness in internal control over financial reporting as described below, our disclosure controls and procedures were not effective as of December 31, 2018.

**Management's Report on Internal Control over Financial Reporting**

Our management is responsible for establishing and maintaining adequate internal control over financial reporting, as such term is defined in Rule 13a-15(f) under the Securities and Exchange Act of 1934.

The Company's internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles. A company's internal control over financial reporting includes those policies and procedures that:

(i) Pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the company;

(ii) Provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the company are in accordance with authorizations of management and directors of the company; and

(iii) Provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of the company's assets that could have a material effect on the financial statements.

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with policies or procedures may deteriorate.

A material weakness is a deficiency, or combination of deficiencies, in internal control over financial reporting such that there is a reasonable possibility that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected on a timely basis.

Confidential Treatment Requested by Deloitte                                    D00025749
Confidential Treatment Requested by Deloitte & Touche LLP                       D_DOJ-0018960
                                                                                USAO_REL_01_03161380

Under the supervision of the Audit Committee of the Board of Directors and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, we conducted an evaluation of the effectiveness of our internal control over financial reporting using the criteria established in *Internal Control — Integrated Framework (2013)* issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO). Based on our assessment and those criteria, management concluded that our internal control over financial reporting as of December 31, 2018 was not effective due to the material weakness described below:

- *Failure to timely file*: the Company did not maintain effective information and communication controls with external parties due to delays in our financial statement close and reporting process as evidenced by the untimely filing of our Annual Report on Form 10-K for the year ended December 31, 2018 and our Quarterly Report on Form 10-Q for the quarter ended March 31, 2019. The delay in the finalization of our audit report and filings resulted from a delay in the completion of the audit report of our material equity method investee, Beneficient. The delay in receiving the audited financial statements of Beneficient prevented us from timely executing certain controls within our financial closing and reporting processes.

- *Complex non-routine transactions*: as previously disclosed in Item 4 of Part I of our amended Form 10-Q/A for the quarterly period ended September 30, 2018, management identified a material weakness in our internal controls over the application of generally accepted accounting principles to material complex non-routine transactions, related to the Exchange Transaction with Beneficient. Management has determined that we did not have sufficient accounting resources and personnel to effectively design and execute process level controls over complex non-recurring transactions.

**Remediation Plan for Material Weaknesses in Internal Control over Financial Reporting**

With respect to the material weakness related to *untimely filing*, Beneficient's primary operations commenced on September 1, 2017 with formative transactions to finance the economic rights to several portfolios of alternative assets. Through Beneficient's initial capitalization transactions with a third-party institutional investor, Beneficient's general partner had a change of control event on May 31, 2018, which ultimately resulted in Beneficient applying pushdown accounting as of that date. During 2018, the Company and Beneficient entered into the Exchange Transaction. Beneficient engaged a large international independent registered public accounting firm to complete its audits as of December 31, 2018 (Successor) and 2017 (Predecessor), and for the periods from June 1, 2018 to December 31, 2018 (Successor), January 1, 2018 to May 31, 2018 (Predecessor) and for the year ended December 31, 2017 (Predecessor).

Beneficient management has represented that the complexity of these transactions, combined with their initial year audit, resulted in their delays in successfully completing their financial reporting. Beneficient management believes that it will be able to provide timely financial reporting to the Company on a go-forward basis. The Company has elected to report its share of the equity earnings of Beneficient on a one quarter-lag and we expect the financial information of Beneficient to be consistently available for us to meet our financial reporting obligations.

With respect to the previously reported material weakness related to *complex, non-routine transactions*, management has begun to implement its remediation plan through the engagement of nationally recognized accounting experts to assist us in accounting and reporting analysis, guidance research and accounting memo documentation as required, and in particular, in our third quarter and year end reporting for the exchange transaction with Beneficient. The Company also sought "pre-clearance" from the staff of the SEC (the "Staff") to confirm certain accounting positions related to the Exchange Transaction for the year ended December 31, 2018. Based on management's review, we have determined that although progress has been made in remediating this material weakness, we do not believe that it has been fully remediated. Management, with the oversight of the Audit Committee, is assessing additional accounting resource and personnel requirements as we continue to develop our strategic relationship with Beneficient during 2019. Management, with the oversight of the Audit Committee, will continue to take steps to remedy the material weakness expeditiously to reinforce the overall design and capability of our control environment.

63

Confidential Treatment Requested by Deloitte    D00025750
Confidential Treatment Requested by Deloitte & Touche LLP    D_DOJ-0018961
USAO_REL_01_03161381

**Changes in Internal Control over Financial Reporting**

Other than the action described in *Remediation Plan for Material Weaknesses in Internal Control over Financial Reporting*, there were no other changes in the Company's internal control over financial reporting identified in connection with management's evaluation pursuant to Rules 13a-15(d) or 15d-15(d) of the Securities Exchange Act of 1934 during the quarter ended December 31, 2018 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.

The Company's independent registered public accounting firm has audited the Company's internal control over financial reporting as of December 31, 2018, as stated in the Report of Independent Registered Public Accounting Firm, appearing under Item 8.

64

Confidential Treatment Requested by Deloitte    D00025751
Confidential Treatment Requested by Deloitte & Touche LLP    D_DOJ-0018962
                                                             USAO_REL_01_03161382

# PART III

### ITEM 10. DIRECTORS, EXECUTIVE OFFICERS AND CORPORATE GOVERNANCE.

The following paragraphs provide information as of the date of this report about each of our current directors and executive officers.

Our bylaws permit a maximum of fifteen directors. The board of directors currently consists of fourteen members.

| Name | Age | Positions |
| --- | --- | --- |
| Murray T. Holland | 65 | President and Chief Executive Officer |
| Brad K. Heppner[1] | 53 | Director, Chairman of the Board |
| William B. Acheson | 54 | Chief Financial Officer |
| Peter T. Cangany, Jr.[1] | 61 | Director |
| Michelle Caruso-Cabrera[1] | 50 | Director |
| David F. Chavenson[2] | 67 | Director |
| Richard W. Fisher[1] | 70 | Director |
| David H. Glaser[1] | 62 | Director |
| Thomas O. Hicks[1] | 73 | Director |
| Dennis P. Lockhart[2] | 72 | Director |
| Kathleen Mason[2] | 70 | Director |
| Bruce W. Schnitzer[1] | 74 | Director |
| Roger T. Staubach[1] | 77 | Director |
| Sheldon I. Stein[1] | 65 | Director |
| David H. de Weese[1] | 77 | Director |
| Bruce Zimmerman[1] | 61 | Director |

_____

(1) Appointed to our Board of Directors upon the closing of the Purchase and Contribution Transaction, which occurred on April 26, 2019.
(2) Appointed to our Board of Directors on May 13, 2019.

The biographies of the above-identified individuals are set forth below:

***Murray T. Holland*** has served as our President and Chief Executive Officer since April 26, 2019. In 2001, Mr. Holland became an original investor and consultant for MHT Partners, a boutique investment banking firm based in Dallas, Texas with a number of offices in the United States. From 2013 until recently, he was Managing Director of MHT Partners. Mr. Holland resigned from this position in connection with the Transaction. Prior to MHT, he was CEO and principal shareholder of Convergent Media Systems (Atlanta), a $100 million custom network outsourcing firm with approximately 300 employees, CEO and principal shareholder of Convergent Group Corporation (Denver), a $200 million geographic information systems software and integration firm with approximately 450 employees, and CEO and principal shareholder of BTI Americas (Chicago), a $2.7 billion business travel agency with approximately 4,400 employees. EDS was his principal business partner in these ventures. Prior to that, Mr. Holland was a partner at the law firm of Akin, Gump, Strauss, Hauer & Feld (Dallas) in corporate finance and securities, a Senior Vice President of Credit Suisse First Boston (New York and Dallas) in Mergers and Acquisitions and a Managing Director of Kidder, Peabody & Co. (New York) in Mergers and Acquisitions. He graduated from Washington and Lee University with a B.S. in 1975, University of Virginia Graduate School of Business Administration with an M.B.A. in 1978, and Washington and Lee University School of Law with a J.D. in 1980. Mr. Holland is the author of "*A Nation in the Red*" (McGraw Hill- 2014), a book about the U.S. national debt and its implications.

***Brad K. Heppner*** is the Chief Executive Officer and Chairman of the Board of Directors of Beneficient. Mr. Heppner has acquired or founded ten operating companies principally in the financial services, investment and insurance sectors, each with a common business purpose of providing highly specialized solutions for alternative asset owners. Mr. Heppner founded Heritage Highland in 1996 as a family office to organize, acquire and own as controlling or sole shareholder these operating companies. In 2003, Mr. Heppner organized

Confidential Treatment Requested by Deloitte D00025752
Confidential Treatment Requested by Deloitte & Touche LLP D_DOJ-0018963
USAO_REL_01_03161383

Highland Consolidated Business Holdings, L.P. which is the predecessor-in-interest to Beneficient and reorganized into Beneficient in September 2017. He has successfully completed realizations from seven of the ten Heritage Highland companies through mergers and transactions with Fortune 50 companies or institutionally backed management teams. In 2003, Mr. Heppner merged The Crossroads

65

Confidential Treatment Requested by Deloitte  D00025753
Confidential Treatment Requested by Deloitte & Touche LLP  D_DOJ-0018964
USAO_REL_01_03161384

## SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) of the Securities and Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

GWG HOLDINGS, INC.

Date: July 9, 2019      By: /s/ Murray T. Holland

*President and Chief Executive Officer*

KNOW ALL PERSONS BY THESE PRESENTS, that each person whose signature appears below constitutes and appoints Murray T. Holland and Craig Opp, jointly and severally, as his or her true and lawful attorneys-in-fact and agents, with full power of substitution and resubstitution, for him or her, and in his or her name, place and stead, in any and all capacities, to sign any and all amendments to this report, and to file the same, with all exhibits thereto, and other documents in connection therewith, with the Securities and Exchange Commission, granting unto said attorneys-in-fact and agents full power and authority to do and perform each and every act and thing requisite or necessary to be done in and about the premises hereby ratifying and confirming all that said attorneys-in-fact and agents, or his substitute or substitutes, may lawfully do or cause to be done by virtue hereof.

Pursuant to the requirements of the Securities and Exchange Act of 1934, this report has been signed below, as of July 9, 2019, by the following persons on behalf of the registrant and in the capacities indicated below.

| *Signature* | *Title* |
| --- | --- |
| /s/ Murray T. Holland<br>Murray T. Holland | President and Chief Executive Officer<br>(Principal Executive Officer) |
| /s/ William B. Acheson<br>William B. Acheson | Chief Financial Officer<br>(Principal Financial and Accounting Officer) |
| /s/ Brad K. Heppner<br>Brad K. Heppner | Director |
| /s/ Peter T. Cangany, Jr.<br>Peter T. Cangany, Jr. | Director |
| /s/ Michelle Caruso-Cabrera<br>Michelle Caruso-Cabrera | Director |
| /s/ David F. Chavenson<br>David F. Chavenson | Director |
| /s/ Richard W. Fisher<br>Richard W. Fisher | Director |
| /s/ David H. Glaser<br>David H. Glaser | Director |
| /s/ Thomas O. Hicks<br>Thomas O. Hicks | Director |
| /s/ Dennis P. Lockhart<br>Dennis P. Lockhart | Director |
| /s/ Kathleen J. Mason<br>Kathleen J. Mason | Director |
| /s/ Bruce W. Schnitzer | Director |

Confidential Treatment Requested by Deloitte     D00025786
Confidential Treatment Requested by Deloitte & Touche LLP     D_DOJ-0018997
    USAO_REL_01_03161417

Bruce W. Schnitzer

/s/ Roger T. Staubach     Director
Roger T. Staubach

Confidential Treatment Requested by Deloitte    D00025787
Confidential Treatment Requested by Deloitte & Touche LLP    D_DOJ-0018998
USAO_REL_01_03161418

| Signature | Title |
|---|---|
| /s/ Sheldon I. Stein<br>Sheldon I. Stein | Director |
| /s/ David H. de Weese<br>David H. de Weese | Director |
| /s/ Bruce E. Zimmerman<br>Bruce E. Zimmerman | Director |

87

Confidential Treatment Requested by Deloitte                                    D00025788
Confidential Treatment Requested by Deloitte & Touche LLP                       D_DOJ-0018999
                                                                                USAO_REL_01_03161419