Q2AFHEPC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK

2  ------------------------------x

3  UNITED STATES OF AMERICA,

4           v.                   25 Cr. 503 (JSR)

5  BRADLEY HEPPNER,

6                           Conference
            Defendant.

7  ------------------------------x

8

                           New York, N.Y.
9                           February 10, 2026
                           9:00 a.m.

10

11  Before:

12               HON. JED S. RAKOFF,

13                      District Judge

14                APPEARANCES

15  JAY CLAYTON
      United States Attorney for the
16      Southern District of New York
   BY:  DANIEL G. NESSIM
17      ALEXANDRA ROTHMAN
      Assistant United States Attorneys

18

   QUINN EMANUEL URQUHART & SULLIVAN LLP
19      Attorneys for Defendant
   BY:  BENJAMIN O'NEIL
20      CHRISTOPHER CLORE
      ROBERT ZINK
21      CLARE REARDON

22

23

24

25

Q2AFHEPC

 1             (Case called)

 2             MR. NESSIM:  Good morning, your Honor.

 3             Daniel Nessim and Alexandra Rothman for the

 4  government.

 5             THE COURT:  Good morning.

 6             MS. ROTHMAN:  Good morning.

 7             MR. O'NEIL:  Good morning, your Honor.

 8             It's Ben O'Neil, Rob Zink, Christopher Clore and Clare

 9  Reardon for the defendant, Mr. Heppner.

10             THE COURT:  Good morning.

11             MR. O'NEIL:  Good morning.

12             THE COURT:  Please be seated.

13             So, the government filed a motion to overrule the

14  alleged claims of privilege and work product on certain

15  documents that were submitted by the defendant to AI.

16             I've read the papers, but I'll hear anything further

17  defense counsel wants to say on this.

18             MR. O'NEIL:  Thank you, your Honor.

19             Just from here?

20             THE COURT:  Whatever you'd like.

21             MR. O'NEIL:  Thanks.

22             So, I think, based on reading the government's

23  brief, that the government just has a fundamental misconception

24  of what constitutes work product.

25             THE COURT:  Well, first of all, I don't see any basis

Q2AFHEPC

1  for a claim of attorney-client privilege.

2          Did you want to say anything further on that?

3          MR. O'NEIL:  I think what those reports reflect -- and

4  I'm happy to submit the reports for your review *in camera*.

5          THE COURT:  No.  I'm not saying, remotely, any basis

6  for any claim of attorney-client privilege.  If you wanted to

7  say anything further, say it now, but I'm happy to hear you on

8  work product.

9          MR. O'NEIL:  All I would say is that those reports

10  incorporated information that we had conveyed to Mr. Heppner

11  over the course of our representation after learning things

12  from the government.

13          THE COURT:  And he disclosed it to a third-party, in

14  effect, AI, which had an express provision that what was

15  submitted was not confidential.

16          What do you want to say about work product?

17          MR. O'NEIL:  I think both the rule and cases

18  interpreting it indicate that it doesn't matter whether a party

19  created the work product, whether the party did that at the

20  direction of counsel, or whether it was counsel, themselves.

21          If an individual, the defendant here, created a report

22  during -- and in anticipation of litigation, that report is

23  subject to work product protection, whether it was, as I said,

24  created by Mr. Heppner or us, and whether it was done at our

25  direction.

Q2AFHEPC

1          I guess the case I would point you to is *Shih v. Petal*

2   *Card*, which is 565 F. Supp. 3d 557 at 57172.  That case says,

3   explicitly, that it doesn't matter whether an attorney directed

4   a client.

5          THE COURT:  What court is that?

6          MR. O'NEIL:  This is Southern District of New York.

7          THE COURT:  Who is the judge?

8          MR. O'NEIL:  That's Magistrate Judge Moses.

9          I think the context of these reports was that in

10  2025, after Mr. Heppner had received a grand jury subpoena,

11  after it was clear with discussions with the government that

12  Mr. Heppner was the target of this investigation and after the

13  government had asked us to come in and present on the

14  facts, Mr. Heppner -- using an AI tool -- prepared reports that

15  outlined defense strategy, that outlined what he might argue

16  with respect to the facts and the law that we anticipated that

17  the government might be charging.

18         I think it's very clear he was preparing these reports

19  in anticipation of a potential indictment, which, ultimately,

20  came in November.

21         The purpose of his preparing these reports was to

22  share them with us so that he could discuss defense strategy

23  with us, we could create his defense strategy.  It's not as if

24  these were documents created during the course of the alleged

25  scheme in which he is --

Q2AFHEPC

1              THE COURT:  No, I understand.

2              The core purpose of Work Product Doctrine is to

3     protect the mental strategies of counsel in anticipation of

4     litigation.

5              How did that relate to this?  This was not something

6     that reflected your strategy, as I understand what you're

7     saying.

8              MR. O'NEIL:  No, I think it did affect our

9     strategy, your Honor.

10             THE COURT:  No.  Did it reflect your strategy.

11             MR. O'NEIL:  No.  As we acknowledge, these were

12    prepared by the defendant on his own volition.

13             But again, I would also point to the Rule of Federal

14    Criminal Procedure 16(b)(2)(A), which says 16(b)(1) does not

15    authorize discovery or inspection of reports, memoranda, or

16    other documents made by the defendant or the defendant's

17    attorney or agent during the case's investigation or defense.

18             So, I don't think --

19             THE COURT:  Okay.  I get your point.  Let me hear from

20    the government.

21             MS. ROTHMAN:  Your Honor, I think by Mr. O'Neil's own

22    concessions, these materials are not attorney work product

23    because they don't reflect the legal strategy of Quinn Emmanuel

24    or Mr. Heppner' attorneys; they reflect Mr. Heppner's own

25    actions, which are simply not covered by the purpose or the

Q2AFHEPC

1    policy behind this rule.

2            And we cited in our brief, I think, the Second

3    Circuit's decision in *Re: Grand Jury Subpoenas* 318 F.3d 379 --

4    it's from 2003 -- really controls here, where the Court was

5    explicit -- and this is on page 11 of our brief -- that if the

6    rule does not shield materials in an attorney's possession that

7    were prepared neither by the attorney nor his agents.

8            And I haven't heard any proffer from defense counsel

9    that these were prepared by attorneys or his agents.  And so

10   both by the clear law of the Second Circuit and the underlying

11   policy reasons, there's no basis to find that the attorney work

12   product protection to apply to these documents.

13           THE COURT:  Isn't it also true that the AI tool that

14   Mr. Heppner used expressly provided that users have no

15   expectation of privacy in their inputs?

16           MS. ROTHMAN:  That's correct, your Honor, as well.

17           So there are sort of multiple hurdles why we don't

18   think defense can establish their burden -- and it is their

19   burden -- to claim privilege.

20           THE COURT:  All right.  The government's motion is

21   granted.

22           Now let's turn to Mr. Heppner's motions.  The first

23   motion is to strike various paragraphs from the indictment as

24   prejudicial or irrelevant.  I just want to be clear that I

25   never, ever submit the indictment to the jury.  I have not done

Q2AFHEPC

1    sew in any case in 30 years, and I don't intend to change that

2    policy now.

3           That doesn't mean you don't technically have a right

4    to have things stricken, but I really wonder whether you

5    care, given that the jury is never going to see this

6    indictment.

7           MR. O'NEIL:  So, if it is the case that the jury is

8    not going to see the indictment, I think our arguments

9    are, with respect to surplusage, are probably better framed as

10   motions *in limine*.

11          I think we anticipate making motions with respect to

12   the bankruptcy, with respect to other victims, and with respect

13   to the paragraph in the securities fraud section regarding one

14   transaction that was a loan.

15          THE COURT:  Yeah.  I agree.  I think that most of this

16   is going to come up as motions *in limine*.  Some of them seem to

17   be worthy of having a written response from the government

18   because they've not frivolous at all, but I think that's the

19   right time to bring it up.

20          There may be one or two that need to be decided

21   sooner.  I'm particularly intrigued by the motion to dismiss

22   Count Four as time-barred.

23          But why don't we give the government a chance to

24   respond, so -- and I think you should respond to all the

25   motions, even if some of term turn out to be things we'll take

Q2AFHEPC

1    up in a motion *in limine* stage.

2            But how long do you want to respond?

3            MR. NESSIM:  Two weeks, your Honor.

4            THE COURT:  Yeah, that's fine.

5            Today is the 10th, so that would be the 24th.

6            And does defense counsel want an opportunity to put in

7    a reply paper?

8            MR. O'NEIL:  Yes.

9            THE COURT:  How long do you want for that?  I'll give

10   you either a week or a week, but --

11           MR. O'NEIL:  We'll take a week.

12           THE COURT:  Seems reasonable.

13           Okay.  So that's March 3.  And given that we have the

14   trial in April, I will decide that motion no later than

15   March 10.

16           I may decide, on some of them, that they should only

17   be raised as motions *in limine*, and the timing for that is set

18   forth by the individual rules.  But to the extent that they

19   affect things that go beyond motions *in limine*, we'll decide it

20   by March 10.

21           Anything else we need to take up today?

22           MR. NESSIM:  No, your Honor.  Thank you.

23           MR. O'NEIL:  Your Honor, I would just flag -- and I'm

24   not exactly sure how this will develop, but -- with respect to

25   the AI reports, should they be presented by the government as

Q2AFHEPC

```
1    evidence, the primary witness with respect to the purpose of

2    the reports, the use of the reports would probably be us, would

3    be Quinn Emmanuel.  And it could create significant

4    conflict, you know, witness-advocate conflict.  So, I think

5    it's just something to flag.

6              THE COURT:  Well, that's an interesting point.  And

7    you put the government on notice.

8              You know, if that were the situation -- and it may not

9    be the situation; I mean, how you can choose to present them; I

10   don't know.

11             MR. O'NEIL:  Yup.

12             THE COURT:  And I'm not sure that any testimony would

13   have to be before the jury -- but maybe it would -- and in that

14   case, the government, if foreseeing that in advance or, at the

15   time, still persisted, we could -- we might have to, at that

16   point, declare a mistrial, in which case I would try the case

17   in -- oh, certainly no later than 2030.  But I just put the

18   government on notice of that.

19             So, anything else we need to discuss?

20             MR. NESSIM:  Your Honor, just on length, the defense

21   had, I think, 15 extra pages.  We would just request the same

22   for our opposition.  We may not need it, but just in case we

23   do.

24             THE COURT:  I'm sorry?

25             MR. NESSIM:  The defense had requested 15 extra pages
```

Q2AFHEPC

```
 1    in their opening motion.  We would just request the same.
 2                THE COURT:  Yeah.  You can have a full 15 extra.
 3                MR. NESSIM:  Thank you.
 4                THE COURT:  Okay.  Anything else?
 5                Very good.
 6                If there are motions in limine -- not just the things
 7    we discussed today, but there may be others -- remind me of the
 8    exact trial date.
 9                MR. NESSIM:  April 6, your Honor.
10                THE COURT:  April 6.
11                MR. NESSIM:  Yes.
12                THE COURT:  All right, we might need to have -- I'm
13    not going to schedule it yet, but we might need to have a
14    pretrial conference on April 3, the Friday before, to go over
15    those motions in limine.
16                Actually, why don't we?  We might as well schedule
17    that now, because it will give me a good opportunity to discuss
18    with you my trial procedures, such as the fact that I never
19    allow speaking objections on objections.  But we'll deal with
20    that then.
21                But all right.  What do we have, Linda?
22                THE DEPUTY CLERK:  Thursday, April 2.
23                THE COURT:  No.  Friday, April 3.
24                THE LAW CLERK:  It's Good Friday, Judge.
25                THE COURT:  Oh, it's Good Friday.
```

Q2AFHEPC

1              Okay.  April 2.

2              THE DEPUTY CLERK:  Thursday, April 2, any time you

3      like.  You just have toe leave at 3:45.

4              THE COURT:  Okay.  Why don't we do 10 a.m. on April 2,

5      tempted though I am by April 1, but April 2.

6              Very good.

7              Thanks very much.

8              (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25