

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 38th Floor*
*New York, New York 10278*

April 27, 2026

**BY EMAIL**

Honorable Jed S. Rakoff
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

> Re:    *United States v. Bradley Heppner*, 25 Cr. 503 (JSR)

Dear Judge Rakoff:

The Government respectfully writes to request that the Court preclude the defense from questioning two upcoming witnesses on topics that are unduly prejudicial, likely to confuse the jury and waste time, and run afoul of the Federal Rules of Evidence. *First*, the Court should preclude the defense from questioning Bruce Schnitzer, a Beneficient and GWG board member, about his recollection of purported out-of-court statements of Sheldon Stein regarding Stein's desire to become CEO of Beneficient. Those statements are hearsay, involve matters that are collateral to the issues in this case, and do not constitute proper impeachment pursuant to Rule 613. *Second*, the Court should preclude the defense from questioning Timothy Harmon, the son of Charles Harmon, about an unrelated civil matter in which a magistrate judge imposed discovery sanctions on Harmon. Because the underlying civil dispute and Harmon's alleged conduct in that case do not bear on Harmon's truthfulness, they are not admissible pursuant to Rule 608. Even if questions about Harmon's alleged conduct were admissible, the Court should preclude the defendant from inquiring further about the magistrate judge's order in the matter, pursuant to Rules 608, 801, and 403.

## I.   Testimony of Bruce Schnitzer

### A.   Background

The Government anticipates calling Bruce Schnitzer at trial principally to testify about the defendant's doctoring of Board minutes from the October 10, 2019 ERC meeting that were later submitted to the SEC. Schnitzer served as a Board member of Beneficient from approximately the fall of 2018 through the present and of GWG from approximately April 2019 through approximately July 2021. On May 18, 2023, in connection with the arbitration proceeding filed by Stein against Beneficient,[1] Schnitzer sat for a deposition in which he testified, among other things, that "Mr. Stein called me to challenge the direction and decisions made by the CEO . . . [a]nd to

---

[1] As the Court is aware, the arbitration was resolved in Stein's favor. The arbitrator rejected the claims of Beneficient, and an appellate court in Texas recently upheld the arbitrator's award.

April 27, 2026
Page 2

suggest that the CEO was not qualified to be CEO, and that Mr. Stein proposed that he become CEO." (HK_GJS_0095789 at 161).

On the first day of trial, the defense cross-examined Stein about his purported desire to become CEO of Beneficient. Stein testified:

Q.   You wanted to be the CEO of Beneficient.
A.   Is that a joke --
Q.   No, it's not a joke, sir.
A.   -- or is it a serious question?
Q.   It's a serious question.
A.   I had the best job in the world paying me a fortune with a ten-year contract. I was on the board of a company whose business plan I didn't believe in. Why in the world would I want to be CEO of a company that I didn't believe in and didn't feel it had any business?
Q.   Do you know who Bruce Schnitzer is?
A.   I do.
Q.   And so you never had a conversation with Bruce Schnitzer where you told Bruce Schnitzer, I want to be the CEO of GWG instead of Brad?
A.   No. Bruce Schnitzer was Brad's crony. No, that conversation -- I never called Bruce Schnitzer in my life.

Tr. 104.[2]

### B.  Applicable Law

"A prior inconsistent statement can be offered to impeach a witness, but not substantively, pursuant to Federal Rule of Evidence 613." *United States v. Cohen*, No. 23 Cr. 134 (VSB), 2026 WL 263332, at *1 (S.D.N.Y. Feb. 1, 2026). Rule 613(b) states "extrinsic evidence of a witness's prior inconsistent statement may not be admitted until after the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it." Fed. R. Evid. 613(b).

Before admitting extrinsic impeachment evidence pursuant to Rule 613(b), courts require, among other things, (i) "the extrinsic evidence of the prior inconsistent statement must be competent and otherwise admissible," (ii) "the impeachment by prior inconsistent statement must relate to a material rather than a collateral matter," and (iii) "even if all of these requirements have been satisfied, the trial court nevertheless may exclude the extrinsic evidence under Rule 403 on an appropriate finding." *United States v. Ghailani*, 761 F. Supp. 2d 114, 117-18 (S.D.N.Y. 2011).

Regarding the independent admissibly of the extrinsic evidence, "[t]he Second Circuit has held that 'a third party's characterization of a witness's statement does not constitute a prior

---

[2] Tr. refers to the trial transcript.

April 27, 2026
Page 3

statement of that witness unless the witness has subscribed to that characterization.'" *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 168 F. Supp. 2d 57, 60 (S.D.N.Y. 2001) (quoting *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992) (*per curiam*)); *see also United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (FBI notes offered to impeach not attributable to witness because "a witness may not be charged with a third party's characterization of his statements unless the witness has subscribed to them"). Accordingly, in the absence of an endorsement by the witness, evidence of a witness's prior statement may not be admitted as a prior inconsistent statement unless it is in the form of a verbatim transcript of the witness's own words. *See Almonte*, 956 F.2d at 29. The burden in on the proponent of an alleged prior inconsistent statement to prove that the evidence "reflect[s] the witness's own words rather than [another]'s characterization." *Id.*

Regarding the requirement that the impeachment relate to non-collateral issues, "[a] witness may be 'impeached by extrinsic proof of a prior inconsistent statement only as to matters which are not collateral, *i.e.*, as to those matters which are relevant to the issues in the case and could be independently proven.'" *United States v. Whitehead*, No. 22 Cr. 692 (LGS), 2024 WL 3085019, at *12 (S.D.N.Y. June 21, 2024), *aff'd*, No. 24 Cr. 1769, 2026 WL 32351 (2d Cir. Jan. 6, 2026) (quoting *United States v. Rivera*, 273 F. App'x 55, 58 (2d Cir. 2008) (summary order)).

### C. Discussion

The defense should be precluded from questioning Schnitzer about his recollection of Stein's purported out-of-court statement that Stein proposed to become CEO of Beneficient; the statement fails each of the above-described requirements of Rule 613.[3]

*First*, Schnitzer's testimony about what Stein allegedly said is not competent evidence or otherwise admissible at trial. Schnitzer's characterization of Stein's purported statement does not constitute a prior statement of Stein. Stein has not subscribed to the characterization and it is not a transcript of Stein's own words. *See Bank Brussels Lambert*, 168 F. Supp. 2d at 60; *Almonte*, 956 F.2d at 29. In addition, the testimony is hearsay; it is an out-of-court statement being offered for the truth of the matter asserted—i.e., that Stein actually wanted to be CEO. To the extent the statement were to be offered for some other non-hearsay purpose, the statement would have no relevance outside impeachment and, therefore, cannot be independently admitted.

---

[3] To the extent that the defendant seeks to offer proof—not that Stein made a purportedly prior inconsistent statement—but instead that Stein actually harbored a desire to be CEO and therefore lied, such "impeachment by contradiction" on such a collateral issue should be easily precluded. *See United States v. Purdy*, 144 F.3d 241, 245-46 (2d Cir. 1998) (Rakoff, J.) ("Extrinsic evidence offered for impeachment on a collateral issue is properly excluded."); *United States v. Ortega*, No. 22 Cr. 91 (RA), 2023 WL 6140929, at *12 (S.D.N.Y. Sept. 20, 2023), *aff'd*, No. 23-7417, 2025 WL 783735 (2d Cir. Mar. 12, 2025) ("[A]ny effort to call DeLaura under the so-called doctrine of 'impeachment by contradiction' was also improper, given that the purportedly impeaching testimony would have related exclusively to collateral issues"); *see also United States v. Jackson*, 540 F.3d 578, 587-99 (7th Cir. 2008) (explaining that a party may not impeach by contradiction on collateral matters).

April 27, 2026
Page 4

*Second*, while the defense opened on Stein's purported wish to be CEO, whether or not Stein had a conversation with Schnitzer about this purported desire is collateral; it is not "relevant to the issues in the case." *Whitehead*, 2024 WL 3085019, at *12. No fact relevant to the charges against the defendant is more or less likely if Stein told Schnitzer that he wanted to be CEO. Any purported conversation with Schnitzer on this tangential topic in no way speaks to whether the defendant made misrepresentations, whether they were material, whether he had the intent to defraud, whether he lied to auditors, or whether he doctored minutes to be sent to the SEC. And even if the issue were not collateral, notably, the defense already cross-examined Stein about whether he wished to be the CEO of Beneficent, and failed to sufficiently confront him with the specifics of this purported statement. *See Ghailani*, 761 F. Supp. 2d at 117-18; *see also United States v. Dilliard*, 101 F.2d 829, 837 (2d Cir. 1938) ("Fairness usually does require that the witness shall be told when and where he made the putatively contradictory statement."). *Cf. United States v. Amato*, No. 03-CR-1382 (NGG), 2006 WL 1891113, at *5 (E.D.N.Y. June 27, 2006) (explaining that the defendant's "counsel confronted [the witness] with the FBI agents' notes, and repeatedly asked [the witness] about purported statements that the 302's suggest that he made. Further, [the witness] denied making these statements, and, after examining the notes, testified that the statements are incorrect reflections of his statements.").

*Third*, even if the defendant had satisfied the other requirements of Rule 613 (and he has not), Schnitzer's testimony about this purported conversation with Stein should be precluded under Rule 403 because any probative value of this testimony is substantially outweighed by the risk of unfair prejudice, jury confusion, and likelihood of wasting the jury's time. As the Court instructed the jury, this trial is about whether the defendant defrauded GWG as well as other potential investors in Beneficient; whether the defendant agreed with others to carry out these frauds; and whether the defendant lied to auditors and the SEC to try to cover up these frauds. Tr. 17-18. Any additional focus on whether Stein wished to leave his current job to become CEO of Beneficient would only be a further distraction for the jury, as the Court already recognized. Tr. 327-28. The defendant has not explained how such a desire, even if true, is relevant to the issues of the defendant's mens rea, materiality, or anything else the Government must prove at trial. To the extent it goes to the credibility of Stein, the defense had a full opportunity to cross-examine Stein on his purported desire to be CEO (a claim he flat-out denied), and further testimony on this topic risks unduly expanding what is already a side show about internal Beneficient corporate intrigue that is confusing to the jury and a waste of time. The defense should be precluded from questioning Schnitzer on this purported conversation at trial.

## II. Testimony of Timothy Harmon

### A. Background

The Government anticipates calling Timothy Harmon at trial to testify that he did not serve as Independent Trustee of the Highland Investment Holding Trust. Currently pending in the Eastern District of Virginia is an unrelated civil action involving an intra-family dispute between the plaintiff, a trust to benefit Harmon's children for which Harmon was a former trustee, and Harmon's mother, Germaine Harmon (the "EDVA Matter"). In advance of trial, the Government disclosed to the defense transcripts from the civil action in which the magistrate judge supervising

4

April 27, 2026
Page 5

discovery orally imposed discovery sanctions against the plaintiff and made certain statements about Harmon's conduct. Specifically, the magistrate judge stated:

> [I]t has now come to light that…Tim Harmon… had [his phone] on auto delete, so it's been represented, as to text messages since before this litigation and throughout, even though [he was] directed by counsel as to their duty to preserve." . . . As to the backup documents for the ESI in Florida that has -- was connected with the Florida litigation, Tim says that his computer conveniently died, I believe in 2020, and that everything was lost. Frankly, I have doubts about that because that's not the way most things work nowadays with backups and the Cloud and with other sources. However, apparently his counsel in Florida had that, and that whatever is subject to production here, instead of producing it, as was his obligation as a prior trustee, he instead directed that all of that ESI go through his personal counsel and not be produced directly to H99DT counsel, as was the obligation. And that is [in] a direct thwart of my prior orders as to discovery, and I don't believe for a moment that he didn't know that that was subject to discovery here… So, I think we are down to the fact that both counsel don't know what they don't know, and that counsel for the defendants particularly can't seem to trace all of the money because of the selective nature of the production of the documents and the self-serving documents that weren't produced selectively. So, I think sanctions at this point are appropriate. At a minimum, I'm going to order that H99DT is precluded from offering its course of dealing evidence, as defendants seek in their first point. I'm also going to order that Tim Harmon is barred from testifying unless he is called as a witness for the defendants, and then his testimony would be limited in that regard to whatever defense counsel seeks to question him on. He can't go beyond the scope of what his direct testimony would be as called by a defense counsel.

(Conf. Tr., *Trust v. Harmon*, No. 1:20-cv-01442, Dkt. 14 at 43-45 (E.D. Va., Aug. 6, 2021)). In a subsequent proceeding in the EDVA Matter, the magistrate judge clarified that the materials that were "missing" were subsequently produced.[4]

In a meeting with the Government, Harmon denied withholding documents from his attorney for the purpose of concealing them. He confirmed that although his computer died in 2020 and his phone was set to delete messages, all of the data in the computer and phone was preserved with his Florida personal attorneys. He further stated that he did not instruct his attorneys in Florida to withhold discovery in the trust proceedings in violation of his obligations; he was unaware that

---

[4] In particular, the magistrate judge said, in rejecting further sanctions in light of the production of the necessary material, "[s]o it seems to me if this is the documents we've been missing, then that makes a big difference to me in terms of what the sanctions would be." (Conf. Tr., *Trust v. Harmon*, No. 1:20-cv-01442, Dkt. 253 at 15 (E.D. Va., Aug. 27, 2021)).

April 27, 2026
Page 6

the missing documents were subject to discovery in the trust proceedings; and he never purposefully chose not to cooperate in the discovery process. Finally, Harmon stated that his attorney has been complying with the court-ordered discovery in the EDVA Matter and that all of the information subject to discovery was produced by his Florida attorneys from the preserved communications and documents.

### B. Applicable Law

Rule 611 provides that "[c]ross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility," and that the Court should "avoid wasting time" and "protect witnesses from harassment or undue embarrassment." It is well settled that "[t]he scope and extent of cross-examination lies within the discretion of the trial judge." *United States v. Scarpa*, 913 F.2d 993, 1018 (2d Cir. 1990) (internal quotation marks omitted). As the Supreme Court has explained:

> [T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination [of a prosecution witness] based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. . . . [T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.

*Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (internal quotation marks omitted) (emphasis in original).

Under Federal Rule of Evidence 608(b), cross-examination regarding "specific instances of a witness's conduct" is permissible only where that conduct is "probative of the [witness's] character for truthfulness or untruthfulness." Fed. R. Evid. 608(b). Thus, Rule 608(b) "does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness" *United States v. Schlussel*, No. 08 Cr. 694 (JFK), 2009 WL 536066, at *3 (S.D.N.Y. Feb. 27, 2009) (quoting *United States v. Nelson*, 365 F. Supp. 2d 381, 386 (S.D.N.Y. 2005)). Moreover, Rule 608(b) "prohibits a party from presenting 'extrinsic evidence' of '[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility' unless that conduct was the subject of a criminal conviction." *United States v. Crowley*, 318 F.3d 401, 417 (2d Cir. 2003) (brackets in original).

Even where Rule 608 permits inquiry into prior conduct, questions about that conduct must still conform to the other rules of evidence. With respect to hearsay, the Second Circuit has explicitly not decided whether another court's commentary about the issues relating to a witness's credibility constitute inadmissible hearsay. *See Cedeño*, 644 F.3d at 83 n.3 ("At oral argument, the government raised the question of whether past judicial credibility determinations are inadmissible hearsay. It did not raise this question in earlier briefing. Accordingly, we treat the argument as forfeited and do not discuss it further."). However, other circuits have considered the question: the

6

April 27, 2026
Page 7

majority view is "that judicial findings of facts are hearsay, inadmissible to prove the truth of the findings unless a specific hearsay exception exists." *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) (citing *Herrick v. Garvey*, 298 F.3d 1184, 1191-92 (10th Cir. 2002); *United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir. 1994); *Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993)); *see also, e.g.*, *United States v. Nelson*, 365 F. Supp. 2d 381, 388 (S.D.N.Y. 2005) ("the Government is correct that judicial findings generally do not fall under the hearsay exception established by Rule 803(8)). *But see United States v. Jones*, 728 F.3d 763, 767 (8th Cir. 2013) ("[T]his court has not decided whether judicial credibility determinations are inadmissible hearsay." (internal quotations and alterations omitted)); *United States v. Dawson*, 434 F.3d 956, 959 (7th Cir. 2006) (finding that the decision whether to allow witness to be cross-examined about a prior judicial determination finding him not credible is confided to the discretion of the trial judge and that such questioning is not barred by Federal Rule of Evidence 608(b)).

Any cross-examination must also satisfy Rule 403. "[U]nder Rule 403, the district court may exclude even relevant evidence if it finds that the 'probative value [of the testimony] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Crowley*, 318 F.3d at 417 (internal citations omitted) (alteration in original); *see United States v. Devery*, 935 F. Supp. 393, 407-08 (S.D.N.Y. 1996) ("[E]ven if the prior act does concern the witness's character for truthfulness under Rule 608(b), its probative value must not be substantially outweighed by its unfairly prejudicial effect under Rule 403.").

## C. Discussion

The Court should preclude cross-examination of Harmon about the unrelated intra-family civil discovery dispute under Rules 608 and 403. At the very least, the Court should preclude any questions based on the magistrate judge's commentary or order, under Rules 608, 801, and 403.

Preliminarily, the defense should be precluded from inquiring about Harmon's discovery compliance because such compliance does not bear on Harmon's "character for truthfulness or untruthfulness." Fed. R. Evid. 608(b). At its most inflammatory, Harmon allegedly violated a court order by providing information to his personal attorney and instructing that attorney not to disclose it, despite having knowledge of the court's orders requiring him to do so. Harmon's alleged conduct caused a delay in discovery, but because the records were preserved (and later turned over) there was no spoliation. Harmon denies knowing that the materials were subject to the court's discovery orders and rejects the idea that he gave the materials to his attorney to prevent their discovery. But even accepting the most incendiary version of these facts, Harmon's conduct does not bear on his truthfulness. Violations of court orders are not themselves indicative of a lack of truthfulness without more. *See United States v. Vasquez*, 840 F. Supp. 2d 564, 574 (E.D.N.Y. 2011) ("[V]iolations of probation or conditions of release, contempt, and escape, all of which involve disregard of court orders are not probative of a witness's character for truthfulness."). Nor is any alleged impropriety in the discovery process sufficiently indicative of dishonesty to fall within Rule 608(b). *See Tigges v. Cataldo*, 611 F.2d 936, 939 (1st Cir. 1979) ("Here, the instance of conduct sought to be inquired into was the giving of allegedly misleading discovery responses. The responses were sufficiently ambiguous that a comparison between them and the historical

April 27, 2026
Page 8

facts seems of doubtful value in assessing Cataldo's credibility"). Because Harmon's conduct does not bear on his character for truthfulness, cross-examination should be precluded.

To the extent Harmon's conduct could be characterized as bearing on truthfulness, the defense should be precluded from inquiring about the magistrate judge's commentary or decision to impose sanctions in the EDVA Matter. *See* Advisory Committee Notes, Fed. R. Evid. 608 ("[T]he extrinsic evidence prohibition of Rule 608(b) bars any reference to the consequences that a witness might have suffered as a result of an alleged bad act. For example, Rule 608(b) prohibits counsel from mentioning that a witness was suspended or disciplined for the conduct that is the subject of impeachment, when that conduct is offered only to prove the character of the witness."); *see also United States v. Johnson*, No. 21-1322, 2022 WL 866284, at *2 (3d Cir. Mar. 23, 2022) ("Rule 608(b) prohibited [the defendant] from asking questions [of a law enforcement witness] about the consequences and findings of the IAD investigations."); *United States v. Whitmore*, 384 F.3d 836, 837 (D.C. Cir. 2004).

The magistrate judge's ruling in the EDVA Matter stands in stark contrast to situations in which a court finds a witness previously testified falsely under oath, and even in that circumstance, evidence of the prior finding is admissible only in certain circumstances. In particular, in *United States v. White*, the Second Circuit outlined the "seven non-exhaustive factors for courts to consider in determining the probity and relevance of prior incidence in which a court has criticized a witness's testimony as unworthy of belief":

> (1) whether the prior judicial finding addressed the witness's veracity in that specific case or generally; (2) whether the two sets of testimony involved similar subject matter; (3) whether the lie was under oath in a judicial proceeding or was made in a less formal context; (4) whether the lie was about a matter that was significant; (5) how much time had elapsed since the lie was told and whether there had been any intervening credibility determination regarding the witness; (6) the apparent motive for the lie and whether a similar motive existed in the current proceeding; and (7) whether the witness offered an explanation for the lie and, if so, whether the explanation was plausible.

692 F.3d 235, 239 (2nd Cir. 2012), as amended (Sept. 28, 2012). Here, not only did the magistrate judge not find the defendant had lied under oath, but the magistrate judge did not make factual findings as part of her ruling. Nonetheless, using the *White* framework, all but one of the factors counsel against admission.

The first factor counsels against admission because, even if the magistrate's judge's findings could somehow be characterized as addressing Harmon's veracity in the specific civil matter, she certainly did not address his veracity generally. *Prophete v. Acevedo-Smith*, 788 F. Supp. 3d 345, 358 (E.D.N.Y. 2025) (finding first factor counseled against admission where prior decision did not address veracity and only indicated witness contradicted by CCTV footage). The second factor counsels against admission because the EDVA Matter related to compliance with discovery whereas the defendant's testimony here relates to his involvement (or lack thereof) in

April 27, 2026
Page 9

the defendant's businesses and trusts. The third factor counsels against admission because Harmon's conduct was not undertaken while under oath. For the fourth factor, the Government recognizes the importance of discovery obligations, but this is the only factor that counsels in favor of admission. The fifth factor counsels against admission because it has been nearly five years since the court's order. The sixth factor counsels against admission because even if some motive existed to allegedly evade the magistrate judge's discovery order, that motive would have no bearing on the witnesses testimony here. The seventh factor again counsels against admission because Harmon's lack of understanding is plausible, even if doubted by the magistrate judge.

Irrespective of the application of the circuit's *White* factors, the colloquy by the judge is inadmissible hearsay. "It is well settled in the Second Circuit that a judgment or judicial opinion in another case, including an arbitrator's opinion, is inadmissible hearsay." *LoCurto v. AT&T Mobility Servs. LLC*, No. 13 Civ. 4303 (AT) (KNF), 2018 WL 11604501, at *4 (S.D.N.Y. Sept. 26, 2018); *see also United States v. Davis*, 183 F.3d 231, 257 n.12 (3d Cir. 1999) (emphasizing that in attacking the defendant's character for truthfulness "the government cannot make reference to Davis's forty-four day suspension or that Internal Affairs found that he lied about" an incident because "[s]uch evidence would not only be hearsay to the extent it contains assertion of fact, it would be inadmissible extrinsic evidence under Rule 608(b)"). There are no hearsay exceptions to permit questions concerning the statements of the judge in the unrelated EDVA Matter.

In addition, even if there were some marginal probative value to the magistrate judge's colloquy in the EDVA Matter, it would be substantially outweighed by the danger of unfair prejudice and confusion. *See* Fed. R. Evid. 403. The risk of unfair prejudice is particularly acute where the out-of-court statements are judicial ones, because the jury "may give exaggerated weight to a judge's supposed expertise on such matters." *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001) ("The difficulty in assessing the probative force of comments by a judge on the credibility of a witness is especially great for a jury . . . ."); *see also Quercia v. United States*, 289 U.S. 466, 469 (1933) ("The influence of a trial judge on a jury is necessarily and properly of great weight and his lightest word or intimation is received with deference, and may prove controlling") (internal citations omitted). Even ignoring that the questions will concern the views of a judge, the prejudicial nature of these questions is obvious: inquiry into the magistrate judge's statements would require the jury to gain an understanding of a different judge's orders in a different case about a different subject matter, which has no bearing on the issues of fact in this case. The defense should not be permitted to prolong and complicate these proceedings by exploring old civil discovery disputes.

\* \* \*

9

April 27, 2026
Page 10

## Conclusion

The Government is committed to presenting its case in an efficient and streamlined manner. And while the defense, of course, has the right to cross-examine the Government's witnesses, that right does not mean the defendant should be permitted to waste the jury's time or confuse the jury on irrelevant and prejudicial topics such as those set forth above. The Court should grant the Government's motion to limit cross-examination of Bruce Schnitzer and Timothy Harmon.

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By: *Daniel Nessim*
Daniel G. Nessim
Alexandra Rothman
Kyle A. Wirshba
Assistant United States Attorneys
(212) 637-2486