

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 3, 2026

**VIA EMAIL**

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

>    Re:    *United States v. Bradley Heppner*, 25 Cr. 503 (JSR)

Dear Judge Rakoff:

The Government respectfully writes to supplement its proposed requests to charge (Dkt. 48), and in response to certain of the defendant's proposed requests to charge, (Dkt. 50).[1]

### A. The SEC Investigation

The Government seeks an instruction that the outcome of the SEC investigation into GWG is irrelevant to the jury's verdict in this case. The Government moved *in limine* to preclude the defense from making arguments or offering evidence about the SEC's decision not to bring an enforcement action. (Dkt. 44 at 32-33). At the final pretrial conference, the Court signaled its agreement with the Government:

> I think whether Mr. Heppner committed this conduct alleged in Count Five does not depend on whether the SEC brought an enforcement action or not, and it would be a gross speculation to infer anything from it. Possibly at charging conference we could take up the issue of whether I need to -- or even maybe even earlier take up some instruction to the jury about the fact of the SEC investigation, you should not speculate as to what the results of that, if any, were, something like that. That I might be inclined to give, but otherwise I think it's totally irrelevant whether it led to enforcement or not.

(Apr. 16, 2026 Tr. 34).

At trial, over the Government's objection, the defense asked SEC witness Timothy Tatman about the outcome of the SEC investigation:

> MR. O'NEIL: The SEC never brought an enforcement action against GWG for failing to disclose that information in 2019 or 2020; did they?

---

[1] The Government does not respond to every request to charge proposed by the defense.

MS. ROTHMAN: Objection.

THE COURT: I will allow that. You may answer.

MR. TATMAN: The SEC did not bring an enforcement action.

(Tr. 1550).

The Court should instruct the jury that the outcome of the SEC investigation is irrelevant to their consideration of the charges. As the Court previously noted, "whether Mr. Heppner committed th[e] conduct alleged in Count Five does not depend on whether the SEC brought an enforcement action or not, and it would be a gross speculation to infer anything from it." (Apr. 16, 2026 Tr. 34).

At trial, the defense tried to shoehorn its questions about the SEC's actions into an argument about materiality. (Tr. 1546 (noting "[Y]our Honor, the point is obviously those minutes couldn't have been too important to him in the context of an investigation about GWG's public disclosures if he can't even answer getting these minutes and then going back and looking at the disclosures.")). The bare fact that the SEC did not take an enforcement action offers no probative value and invites the jury to wrongly assume that the SEC had the same facts as they do. More importantly, materiality is not an element of Section 1519, a point on which both parties seem to agree as neither sought a materiality instruction in their requests to charge on Count Five. (*Compare* Dkt. 50 at 48-49 (Defense Request No. 29) *with* Dkt. 48 at 43-44 (Gov't Request No. 17)). Nor would it be logical to insert any such requirement here; Section 1519 is focused on the intent of the defendant, not the effect, if any, on any investigation, which need not even be pending at the time of the defendant's obstructive acts. *See United States v. Gray*, 642 F.3d 371, 377 (2d Cir. 2011) ("[I]n enacting § 1519, Congress rejected any requirement that the government prove a link between a defendant's conduct and an imminent or pending official proceeding."). Thus, the defense should not be permitted to make materiality arguments with respect to Count Five—because it is not an element—and the Court should instruct the jury that the outcome of the SEC investigation into GWG is irrelevant to their consideration of Count Five, or any other Count.

The Government proposes that the Court instruct the jury as follows:

At trial, you have heard testimony about an SEC investigation into GWG Holdings. I instruct you that the defendant is charged in Count Five with making false documents with *the intent* that they impede, obstruct, or influence the SEC's investigation. The outcome of that investigation, and whether or not the defendant succeeded in obstructing it, is irrelevant to your consideration of Count Five, or any other Count.

### B. **Civil Litigation**

The Government also seeks an instruction, similar to how the Court instructed the jury during the cross-examination of Evan Stone, that the existence of civil litigation does not mean that any claim has been established. (Tr. 802). Specifically, the Government proposes that the Court instruct the jury as follows:

At trial, you have heard testimony about a civil lawsuit filed against Foley & Lardner. You should not speculate as to reason that claim was filed. I instruct you that the fact that a claim has been brought does not, in any way, shape, or form, mean that the claim has been proven. It's just a claim. People bring claims all the time. So, you should not assume that that claim has been established in any way, shape, or form.

## C. **Counts One and Two Unanimity Instructions**

The Court should reject the defense's proposed unanimity instructions inserted in Counts One and Two. Specifically, the defense asks the Court to instruct the jury as follows on Count One:

> Finally, you must be unanimous as to the specific use of a means or instrument of transportation or communication in interstate commerce or the mails that was employed in furtherance of the securities transaction that was undertaken in connection with the allegedly fraudulent conduct.

(Dkt. 50 at 25 (Request No. 13)).

> And asks the Court to instruct the jury as follows on Count Two:

> With respect to Element One: "And you must be unanimous as to the specific transaction that serves as a basis for the scheme to defraud." (Dkt. 50 at 29 (Request No. 15)).

> With respect to Element Three: "Finally, you must be unanimous as to the specific wire communication that was used to further or assist in carrying out the alleged scheme to defraud." (Dkt. 50 at 33 (Request No. 17)).

None of these proposed instructions is a correct statement of law and therefore should be rejected.

With respect to Count One, the defense insists that its proposed charge is based on MODERN FEDERAL JURY INSTRUCTIONS (2026), Criminal, Instruction No. 57-20. (Dkt. 50 at 18 n.10). But these model jury instructions do not include the unanimity instruction the defense has proposed here. Nor does *United States v. Vilar*, 729 F.3d 62 (2d Cir. 2013), the sole case on which the defense seems to rely. *See id.* at 87 n.22 (holding only that the defense never requested any such an instruction and, in fact, invited any such error "if it was indeed, an error"). Thus, the Court should reject this proposed instruction.

With respect to Count Two, the defense insists that its proposed charge is based on the charge this Court gave in *United States v. Newkirk*, 14 Cr. 534 (JSR) (S.D.N.Y. Dec. 30, 2015), Dkt. 106 at 2212-14. (Dkt. 50 at 26 n.18). But the Court in *Newkirk* did not instruct the jury on unanimity as the defense proposes to do here.

Nor would it be a correct statement of law to do so. As the Second Circuit explained in *United States v. Walker*, 254 Fed. Appx. 60, 62 (2d Cir. 2007), a case on which the defense seems to rely, there is no "duplicity" issue, or need to charge specific transactions, when the Government

has "charged a single scheme and which the government argued as such," as the Government has done here. The Government has argued that the defendant engaged in a single scheme to defraud GWG and prospective investors regarding HCLP. There is no basis to require the jury to identify which of the defendant's victims was the target of his scheme—it was both.

The same is true for the defense's attempt to insert a unanimity requirement into the third element of Count Two. The jury need not be unanimous as to the specific wire communication that was used to further or carry out the scheme. *See United States v. Dupre*, 462 F.3d 131, 143 (2d Cir. 2006). Instead, the jury should be instructed that it can find this element satisfied if it finds that the scheme involved the use of at least one interstate wire, as the Government has proposed.

### D.  Count Four Unanimity Instruction

The Court should similarly reject the defense's proposed unanimity instruction as to Count Four, the charge of making false statements to auditors. The defense proposes that the Court instruct the jury as follows:

> Count Four alleges that Mr. Heppner made or caused others to make affirmative misrepresentations and misleading statements to Beneficient's accountants in (a) February 2019 and (b) June 2019.

> You must be unanimous as to which, if any, of these two alleged false or misleading statements Mr. Heppner made, or caused others to make, to Beneficient's accountants.

(Dkt. 50 at 45 (Request No. 26)). But this language finds no support in the law of the Circuit, and should be rejected. *See Cole*, 19 Cr. 869 (ER), Tr. 2784 (Dkt. 289) (providing no unanimity instruction with respect to the charge of making false statements to auditors).

Nor does this language accurately reflect the Government's allegation in Count Four, which charges the defendant with making and causing others to make false statements to Beneficient's auditors in connection with the preparation of GWG's SEC filing in 2019. The "unit of prosecution" is not each false statement to the auditors as the defense claims; it is instead the preparation of Beneficient's audit which was filed with the SEC as part of GWG's 2019 Form 10-K. For this reason, the jury need not be instructed that it must be unanimous as to whether the defendant made false statements in February 2019 or June 2019. Furthermore, the jury should be instructed that the allegation is that the false statements were made or caused to be made in 2019, without reference to particular months.

### E.  Count Four Filing Requirement

Count Four requires proof that Beneficient's audit was required to be filed with the SEC. The Court should include language in the instruction for Count Four concerning the relevant law requiring the incorporation of Beneficient's audit in GWG's Form 10-K. The relevant regulations here are 17 C.F.R. § 210.3-09 and 17 C.F.R. § 240.12b-20. The Government respectfully requests that the Court include the following language:

Public companies like GWG are required to file Form 10-K annual financial statements with the SEC. Where a public company owns a substantial portion of another company, exceeding ten or twenty percent of the subsidiary's common equity, the public company is required to file the financial statements of the subsidiary company with the SEC. In addition, public companies are required to include all material information in its Form 10-K that is necessary to make its financial statements not misleading to a reader of those statements.

## F. Count Four Venue

The Court should reject the defense's proposed venue instruction as to Count Four. The defense has proposed that the Court instruct the jury as follows:

For the charge of false statements to Beneficient's accountants—you must find that it is more likely than not that Mr. Heppner intentionally or knowingly caused Beneficient's accountants to receive the allegedly false and misleading statements in the Southern District of New York.

(Dkt. 50 at 50 (Request No. 30)). That instruction is incorrect as a matter of law.

It is well settled that, for venue to be proper, the Government need only prove, by a preponderance of the evidence, that "at least one act in furtherance of the charge occurred in the Southern District of New York." (Dkt. 48 at 51 (Request No. 21)). The Government is not required to prove, as the defense's proposed instruction suggests, that the defendant caused Beneficient's accountants to receive false and misleading statements on dates when they were physically located in the Southern District of New York. *See, e.g.*, *United States v. Cole*, 19 Cr. 869 (ER), Tr. 2783, 2790 (Dkt. 289) (instructing the jury that for all counts, including Count Eight, which charged false statements to auditors, the Government only "must [] prove that at least one act in furtherance of the charge occurred in the Southern District of New York").[2] For strategic reasons, the defense may wish to limit the jury's consideration of venue to the specific dates and times in which the defendant sent false and misleading statements to the auditors. But that is not the law, nor is it consistent with the facts of the case. Among other things, the jury has heard and seen evidence that Deloitte spent "several months" working through the consolidation issue for the audit (Tr. 1451); that Deloitte received a continuous stream of false information from Beneficient; that Deloitte's New York office was based in Manhattan; and that Frank Fumai, the audit partner, worked on the matter from New York. (Tr. 1446-47; GX 3401, 3404). From all this, among other evidence, the jury can reasonably conclude, by a preponderance of the evidence, that an act in furtherance of the crime took place in the District.

---

[2] The Court in *Cole* continued, "The government does not have to prove that a completed crime was committed within the Southern District of New York or that Mr. Cole was ever in the Southern District of New York. It is sufficient to satisfy the venue requirement if any act in furtherance of the crime charged occurred in this district. The act itself need not be a criminal act. It could include, for example, processing or executing a securities trade within this district. And the act need not have been taken by Mr. Cole, so long as the act was part of the crime that you find he committed." 19 Cr. 869 (ER), Tr. 2791 (Dkt. 289).

The defendant's reliance on *United States v. Wilson*, 01 Cr. 53 (DLC), 2001 WL 798018 (S.D.N.Y. July 13, 2001), is entirely misplaced. (Dkt. 50 at 50). As an initial matter, the defense misstates the holding of *Wilson*. The Court in *Wilson denied* the defendants' motion to dismiss the false statements to auditors count; it did not grant the motion as the defense claims. *See* 2001 WL 798018, at *8 ("The defendants' motion to dismiss Count Eight for improper venue is denied without prejudice and with leave to renew."). True, the defendants in *Wilson* argued that "a violation is committed in the district where the allegedly false or misleading statements were made to the auditors," *id.* at *7, but the Court never adopted that language, let alone charged a jury in that manner. The Court in *Wilson* did reject the Government's alternative argument that venue would be proper because, under 15 U.S.C. § 78m(a), the company was required to file copies of its Forms 10-K and 10-Q "with the NYSE," which was located in New York. *Id.* at *8. But the Government makes no such argument here. Thus, the Court should reject the defendant's proposed venue charge as to Count Four.

### G. Count Five Venue

The Court should also reject the defendant's proposed venue instruction as to Count Five. The defense has proposed that the Court instruct the jury as follows:

> For the charge of obstruction of an SEC investigation— you must find that it is more likely than not that Mr. Heppner intentionally or knowingly caused a member of the Board of Directors of Beneficient to approve the minutes, in the Southern District of New York, that Mr. Heppner allegedly falsified or caused others to falsify.

(Dkt. 50 at 50-51). But there is no requirement that the jury specifically find that the minutes were *approved* in the District, and the Court should reject the defense's attempts to heightened the Government's burden on venue.

As the Court held in denying the defendant's motion to dismiss, venue is proper in a district where, among other things, "the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur," and "[r]eceipt of electronic transmissions in a district is sufficient to establish venue activity there." (Dkt. 42 at 24). Here, the jury has heard testimony and seen evidence that the defendant caused the falsified minutes to be presented to the entire Beneficient Board, which included one Board member, David De Weese, who joined the meeting electronically from Manhattan. (Tr. 1557-58; GX 101). That presentation to the entire Board was part of the defendant's scheme as charged in Count Five; he both intended to deceive members of the Board into believing the minutes were accurate as presented, and he intended to interfere with the SEC's investigation by making it appear that he had disclosed a "long-standing lending relationship" years prior to the Enterprise Risk Committee and then reported that same relationship to the entire Board. The defense, of course, is free to argue that the defendant's conduct in this District was insufficient for purposes of venue. But that argument, if they chose to make it, belongs in the defense's summation, not in the Court's jury charge. The Court should instead instruct the jury, consistent with the Government's proposal, that "venue is proper in this District if any part of the obstructive acts or conduct occurred in this District." (Dkt. 48 at 51).

\* \* \*

For the reasons set forth above, the Government respectfully requests that the Court adopt the Government's additional proposed jury instructions and reject the defense's proposed jury instructions.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: _____
Daniel G. Nessim
Alexandra Rothman
Kyle A. Wirshba
Assistant United States Attorneys
(212) 637-2486/-2580/-2493