UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRADLEY HEPPNER,<br><br>Defendant. | No. 1:25-CR-00503 |

## REPLY TO DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL

Benjamin A. O'Neil
Robert Zink
John ("Fritz") Scanlon
Clare Reardon
Nithya Pathalam
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 13th Street NW, Suite 600
Washington, DC 20005
(202) 538-8151
benoneil@quinnemanuel.com
robertzink@quinnemanuel.com
fritzscanlon@quinnemanuel.com
clarereardon@quinnemanuel.com
nithyapathalam@quinnemanuel.com

Christopher J. Clore
295 5th Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
christopherclore@quinnemanuel.com

*Counsel for Defendant Bradley Heppner*

## TABLE OF CONTENTS

**Page**

I. NO RATIONAL JURY COULD HAVE CONVICTED MR. HEPPNER. .........................1

    A. Mr. Heppner Must Be Acquitted of the Securities Fraud Counts...........................1

    B. Mr. Heppner Must Be Acquitted of the Wire Fraud Counts....................................1

    C. Mr. Heppner Must Be Acquitted of the False Statements to Auditors Count.....................................................................................................................2

    D. Mr. Heppner Must Be Acquitted of all Counts for Lack of Venue. ........................4

II. MR. HEPPNER IS ENTITLED TO A NEW TRIAL..........................................................4

    A. Errors in the Jury Instructions Entitle Mr. Heppner to a New Trial. .......................4

        1. The Jury Instruction for Count 1 Was Improper Because it Deprived the Jury of the Ability to Decide on an Element of the Offense.......................................................................................................4

        2. The Jury Instructions for Counts 1 and 2 Were Improper Because They Lacked Unanimity Instructions............................................................5

        3. The Jury Instruction for Count 4 Was Improper Because it Deprived the Jury of the Ability to Decide on an Element of the Offense.......................................................................................................5

        4. The Jury Instruction for Venue Was Improper Because it Applied a Blanket, Rather than Offense-Specific, Rule. ..............................................5

    B. The Court's Ruling that Mr. Heppner's Written Exchanges with an AI Platform Are Not Privileged Deprived Him of a Fair Trial....................................6

    C. Errors in Evidentiary Rulings Entitle Mr. Heppner to a New Trial..........................7

        1. The Court's Refusal to Admit Key Evidence Warrants a New Trial.......................................................................................................7

        2. The Court's Limitation on Impeachment Warrants a New Trial. ................8

        3. The Court's Admission of the Government's Improper Summary Chart Warrants a New Trial....................................................................8

        4. Admission of Voluminous Wealth Evidence Was Improper.......................9

        5. A Material Variance Warrants a New Trial. ...............................................9

        6. Unnoticed 404(b) Evidence Warrants a New Trial...................................10

CONCLUSION.................................................................................................................10

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abouammo v. United States,*
    146 S. Ct. 1571 (2026) ...................................................................................................3, 4, 6

*Bamco 18 v. Reeves,*
    675 F.Supp. 826 (S.D.N.Y. 1987) .........................................................................................1

*Frazier v. Manson,*
    651 F.2d 1078 (5th Cir. 1981) .............................................................................................1

*Highland Cap. Mgmt., L.P. v. Schneider,*
    551 F. Supp. 2d 173 (S.D.N.Y. 2008).....................................................................................9

*Kisor v. Wilkie,*
    588 U.S. 558 (2019)..........................................................................................................3

*Richardson v. United States,*
    526 U.S. 813 (1999)..........................................................................................................5

*Schaafsma v. Morin Vt. Corp.,*
    802 F.2d 629 (2d Cir. 1986)................................................................................................4

*Steinhardt Grp. Inc. v. Citicorp,*
    126 F.3d 144 (3d Cir. 1997)................................................................................................1

*United States v. AT&T,*
    642 F.2d 1285 (D.C. Cir. 1980) ...........................................................................................7

*United States v. Chapman,*
    2015 WL 10401776 (D.N.M. Aug. 28, 2015) ..........................................................................6

*United States v. Crop Growers Corp.,*
    954 F. Supp. 335 (D.D.C. 1997)........................................................................................3, 6

*United States v. Dupre,*
    462 F.3d 131 (2d Cir. 2006)................................................................................................5

*United States v. Fernandez,*
    231 F.3d 1240 (9th Cir. 2000) .............................................................................................6

*United States v. Lange,*
    834 F.3d 58 (2d Cir. 2016)..................................................................................................3

*United States v. Leonard,*
    529 F.3d 83 (2d Cir. 2008)................................................................................................4

*United States v. Levy,*
    577 F.2d 200 (3d Cir. 1978)..............................................................................................7

*United States v. Miller,*
    808 F.3d 607 (2d Cir. 2015)..............................................................................................3

*United States v. Nobles,*
    422 U.S. 225 (1975)..........................................................................................................7

*United States v. Rodriguez-Moreno,*
    526 U.S. 275 (1999)..........................................................................................................3

*United States v. Rogers,*
    9 F.3d 1025 (2d Cir. 1993)...............................................................................................4

*United States v. Sakoc,*
    115 F. Supp. 3d 475 (D. Vt. 2015)...................................................................................9

*United States v. Stahl,*
    616 F.2d 30 (2d Cir. 1980)...............................................................................................9

*United States v. Thomas,*
    54 F.3d 73 (2d Cir. 1995).................................................................................................4

## Statutes

15 U.S.C. § 78aa ....................................................................................................................3

## Other Authorities

Fed. R. Evid. 1006(a)............................................................................................................9

Rule 10(b) ..............................................................................................................................3

Rule 13b2-2.........................................................................................................................3, 6

Rule 16 ...................................................................................................................................6

Rule 16(b)(2)..........................................................................................................................6

Rule 16(b)(2)(A) ....................................................................................................................6

Rule 404(b) ..........................................................................................................................10

Rule 1006 ................................................................................................................................8, 9

I.     NO RATIONAL JURY COULD HAVE CONVICTED MR. HEPPNER.

    A.     Mr. Heppner Must Be Acquitted of the Securities Fraud Counts.

As explained in Mr. Heppner's motion for judgment of acquittal or for a new trial (the "Motion"), the only alleged "securities" at issue in this case are limited partnership interests in Beneficient, and the evidence at trial showed that those limited partnership interests do not constitute "securities" because GWG had control over Beneficient. *See* ECF 71 ("Mot.") at 2-6.

In its Opposition, the Government attempts to avoid acquittal by arguing that the December 2019 transaction was actually two agreements: "one was to purchase securities and the second was to have the right to obtain control." ECF 74 ("Opp.") at 15-16. But that argument ignores the facts of this case and the case law cited by Mr. Heppner. The Investment Agreement governing the transaction and the GWG Special Committee Resolution approving it both show that it was a single, indivisible transaction that would not have occurred unless both (a) the limited partnership interests and (b) control of the limited partnerships were conveyed to GWG. *See* GX 3602, GX 120. And the case law on this issue is clear: a purchaser's obtaining of control over a limited partnership, no matter how denominated, results in the purchaser's interests in that limited partnership being excluded from the definition of "investment contract" for purposes of Section 10(b). *See, e.g.*, *Steinhardt Grp. Inc. v. Citicorp*, 126 F.3d 144, 145 (3d Cir. 1997); *Frazier v. Manson*, 651 F.2d 1078, 1080 (5th Cir. 1981); *Bamco 18 v. Reeves*, 675 F.Supp. 826, 830 (S.D.N.Y. 1987). In making a determination of whether the purchaser obtained control over the limited partnership, the court examines "the transaction as a whole." *Steinhardt*, 126 F.3d at 153; *see Frazier*, 651 F.2d at 1080; *Bamco* 18, 675 F.Supp. at 831.

    B.     Mr. Heppner Must Be Acquitted of the Wire Fraud Counts.

As explained in Mr. Heppner's Motion, the evidence at trial was insufficient to show that (a) Mr. Heppner made any misrepresentations or omissions at all to GWG, Oaktree, or Infinedi and/or (b) any misrepresentations or omissions were material. Mot. at 7-11.

    *GWG.*  The Government's Opposition with regard to GWG rests entirely on the assertion that the jury credited Mr. Chavenson's testimony. Opp. 17-18. But the Government does not rebut

1

Mr. Heppner's specific reasons for why no rational juror could credit Mr. Chavenson's claim of materiality (Mot. 9-10): that Mr. Chavenson signed 10-Ks disclosing the very Heppner-HCLP affiliation he denied knowing (*see* GX 503 at 163; DX 420 at 108); that GWG had no choice but to proceed with the late-2019 transaction lest it default on its loan covenants (*see* GX 120); and that Mr. Chavenson refused to testify that he would have rejected the transactions had he known about Mr. Heppner's role in the HCLP loan (*see* Tr. 918:25-919:21). The Government's silence cannot substitute for evidence of materiality.

*Infinedi and Oaktree.* The Government's Opposition with regard to Infinedi and Oaktree rests on the incorrect premise that nearly identical emails going to Infinedi and Oaktree contain misrepresentations. Opp. at 18. But those emails contain no such thing. Both emails specify that "HCLP Nominees, LLC (The Senior Lender)" is "an entity who's management is selected by Brad Heppner." GX 1127, GX 1130.  Likewise, the Opposition is incorrect in arguing that a purported letter to Infinedi contains misrepresentations. Opp. at 18 (citing GX 1390). That letter specifies that Mr. Heppner is the manager of HCLP's general partner (in other words, Mr. Heppner controlled HCLP). *See* GX 1390 at 2 ("Highland Consolidated Investments, LLC ('HCILLC'), which owns 1% and serves as HCLP's general partner. Mr. Heppner is the manager of HCILLC.").

The Opposition also incorrectly relies on Mr. Heppner's alleged misrepresentations to Infinedi at an in-person meeting that "not a single dollar [Infinedi] would be investing in the business would go to [Mr. Heppner] or his family." Opp. at 18. Such an  alleged statement could not be false because no one could ever know what Mr. Heppner would have done with money invested by Infinedi—Infinedi never invested any money in Beneficient.

Finally, the Opposition fails to demonstrate that the Government admitted evidence to show that any alleged misrepresentations to Infinedi or Oaktree were material. No witness from Oaktree or Infinedi testified, and Mr. Heppner fully disclosed his control over HCLP.

**C.      Mr. Heppner Must Be Acquitted of the False Statements to Auditors Count.**

As explained in Mr. Heppner's Motion, Mr. Heppner must be acquitted of Count Four because (a) Beneficient's financial statements were not required to be filed with the SEC, (b) venue

2

is lacking, (c) Beneficient is not an issuer, and (d) the Count is time-barred. Mot. at 11-19.

First, the Government is wrong in arguing that 15 U.S.C. § 78aa has the effect of making venue for violations of Rule 13b2-2 (false statements to auditors) coextensive with violations of Rule 10(b) (securities fraud). Opp. at 23-24. The single case cited for the proposition says no such thing. *See United States v. Lange*, 834 F.3d 58 (2d Cir. 2016) (evaluating venue for a securities fraud charge, not false statements to auditors). Rather, to determine if venue exists, the court must first determine the "essential conduct elements" of the crime—that is, the actions a defendant must take to violate the statute. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999). And then the court must pinpoint the location of those actions. *Id.* at 280-81. This analysis is narrowly confined to the statute's proscribed conduct, and the *mens rea* elements are not relevant. *See Abouammo v. United States*, 146 S. Ct. 1571, 1577 (2026); *United States v. Miller*, 808 F.3d 607, 615 (2d Cir. 2015). Applying these principles here, it follows that venue is proper only in the district where the false statements were made. *See United States v. Crop Growers Corp.*, 954 F. Supp. 335, 353 (D.D.C. 1997). Thus, venue for Count 4 was only proper in Texas, where the allegedly false statements were made and received. Mot. at 13-15. The evidence at trial showed that the allegedly backdated and falsified documents were sent from Texas on February 23, 2019 to a Deloitte auditor who was in Texas on that date. Mot. at 14; GX 1363; GX 3404; Tr. at 1489:01-25. There was no evidence at trial showing that misrepresentations were made in New York.

Second, the Government is incorrect in arguing that Beneficient's financial statements were required to be filed with the SEC. *See* Opp. at 20-22. In making this argument, the Government relies almost entirely on SEC Release No. AS-302, but that reliance is misplaced because such agency commentary may only be consulted once a determination is made that the "regulation is genuinely ambiguous." *Kisor v. Wilkie*, 588 U.S. 558, 573 (2019). Here, the SEC regulations are crystal clear, and Beneficient does not fall within either category of entity whose financials must be filed with the SEC as a result of GWG's ownership interest. Mot. at 11-13.

Third, the Government is wrong again in arguing that Beneficient was an issuer and that Count Four is timely. As explained in the Motion (at 15-19) and in the motion to dismiss (ECF 24,

3

25 at 20-31, 35 at 7-14), Beneficient was not an issuer, and the Count is time-barred.

      **D.**       **Mr. Heppner Must Be Acquitted of all Counts for Lack of Venue.**

The Court should acquit Mr. Heppner of all Counts for lack of venue because the Government failed to put in sufficient evidence that the offenses occurred in New York. *See Abouammo*, 146 S. Ct. at 1579  (announcing more restrictive standard for venue).

**II.**       **MR. HEPPNER IS ENTITLED TO A NEW TRIAL.**

      **A.**       **Errors in the Jury Instructions Entitle Mr. Heppner to a New Trial.**

           **1.**      **The Jury Instruction for Count 1 Was Improper Because it Deprived the Jury of the Ability to Decide on an Element of the Offense.**

As explained in Mr. Heppner's Motion, the Court erred in its Count 1 jury instruction by instructing the jury that Beneficient's Preferred Series A Subclass 1 Units and Common Units were securities. Mot. at 20-21. The Beneficient Units were not securities because, as discussed, GWG controlled Beneficient, and, critically, the question of whether the Beneficient Units were securities should have been submitted to the jury. *Id*.

The Government is wrong in arguing that case law in the Second Circuit supports the proposition that the determination of "whether an instrument is a security is a question of law." Opp. at 26-27. The very first case cited by the Government—*United States v. Leonard*, 529 F.3d 83, 87 n.4 (2d Cir. 2008)—specifically cites *United States v. Rogers*, 9 F.3d 1025, 1033 (2d Cir. 1993), which held that a court must submit to the jury a genuinely disputed question of whether an instrument is a security. The other Second Circuit cases that the Government cited are readily distinguishable.  Both *Schaafsma v. Morin Vt. Corp.*, 802 F.2d 629, 637 (2d Cir. 1986) and *United States v. Thomas*, 54 F.3d 73, 78 (2d Cir. 1995) deal with the wholly different scenario where the instrument undisputably constitutes a security that is enumerated in the statute. Here, by contrast, the only possible security that a limited partnership interest could be is an investment contract, and the analysis of whether something constitutes an investment contract involves the fact-intensive *Howey* test. The jury should have been allowed to resolve the factual dispute over whether the Beneficient Units constituted investment contracts.

4

**2.    The Jury Instructions for Counts 1 and 2 Were Improper Because They Lacked Unanimity Instructions.**

The Court's failure to instruct the jury on unanimity as to the specific transaction in Count 1 that constituted securities fraud and the specific wire in Count 2 that constituted wire fraud warrants a new trial. The government's contrary position is incorrect. Opp. 27-28.

The Government relies on *Richardson* for the proposition that a federal jury need not "decide unanimously which of several possible . . . means the defendant used to commit an element of the crime." Opp. 27 (quoting *Richardson v. United States*, 526 U.S. 813, 817 (1999)). But that oversimplifies *Richardson*, which sets out a framework distinguishing means, that need not be unanimously found, from elements that must be identified. 526 U.S. at 817-18. It also recognized "a tradition of requiring juror unanimity where the issue is whether a defendant has engaged in conduct that violates the law." *Id.* at 818-19. Because each transaction was itself an alleged violation of the securities fraud statutes and each wire would violate the wire fraud statute, a unanimity instruction was required. The Second Circuit recognized that instructing on unanimity is "sound practice." *United States v. Dupre*, 462 F.3d 131, 144 (2d Cir. 2006).

**3.    The Jury Instruction for Count 4 Was Improper Because it Deprived the Jury of the Ability to Decide on an Element of the Offense.**

The Court erred in its instruction for Count Four by (a) refusing to submit to the jury the question of whether Mr. Heppner was a director or officer of an issuer, and (b) instructing the jury that GWG was required to file Beneficient's financial statements with the SEC. Mot. at 22-23.

The Government is incorrect in arguing that the jury (a) "was asked to, and did, find that, 'Mr. Heppner was an officer and/or a director of'" an issuer, and (b) "was also asked to find that that the false statements 'would be included in audited financial statements that GWG was required to file by law with the SEC.'" Opp. at 28-29. The Court instructed the jury on both issues. The Court instructed the jury that Beneficient was an issuer and that Beneficient's financial statements were required to be filed with the SEC. ECF 66 at 21. The instructions were wrong.

**4.    The Jury Instruction for Venue Was Improper Because it Applied a**

5

**Blanket, Rather than Offense-Specific, Rule.**

The Court erred  by (a) instructing the jury that the same standard for venue applied to all counts, despite venue being offense-specific, and (b) refusing to instruct the jury on a specific and different venue standard for Count Four. Mot. at 23-24.

The Government is incorrect in arguing that the instruction was "broadly consistent with that requested by the defense" and proper as to Count Four. Opp. at 29. The defense argued for offense-specific venue instructions. *See, e.g., id.* (citing proposed defense instructions), ECF 57, 65. The instruction for Count Four was incorrect. As discussed, the central conduct that must occur for the government to prove a violation of Rule 13b2-2 is the actual making of a materially false statement. *See Crop Growers*, 954 F. at 353. Applying this "conduct-focused analysis," *Abouammo*, 146 S. Ct. at 1577, it follows that venue is proper only in the district where the false statements were made. *See, e.g.*, *Crop Growers*, 954 F. Supp. at 353. The Court's error in refusing to provide a specific venue instruction for Count Four, coupled with its blanket venue instruction that conflicts with the proper venue standard for Count Four, warrants a new trial.

**B.     The Court's Ruling that Mr. Heppner's Written Exchanges with an AI Platform Are Not Privileged Deprived Him of a Fair Trial.**

The Court erred by concluding that no privilege attached to the AI Documents, and the resultant disclosure of those AI Documents to the government deprived Mr. Heppner of a fair trial because the documents allowed the government to see Mr. Heppner's defenses and defense strategy. The Government's arguments in the Opposition all fail.

First, the Government is wrong in arguing that the work-product doctrine does not apply to material prepared by a defendant.  It does apply to material prepared by the defendant himself, as is evident from the language of Rule 16(b)(2)(A): "*Information Not Subject to Disclosure . . . .* reports, memoranda, or other documents made by the defendant . . . during the case's investigation or defense." *See also, e.g.,  United States v. Fernandez,* 231 F.3d 1240, 1247 (9th Cir. 2000) ("Rule 16 of the Federal Rules of Criminal Procedure recognizes the work product privilege."); *United States v. Chapman*, 2015 WL 10401776, at *22 (D.N.M. Aug. 28, 2015) ("Rule 16(b)(2) is

6

considered to be the 'work product exception[ ]' to the general discovery requirements."). And the Supreme Court has held that the work-product doctrine applies in both the civil and criminal contexts. *See United States v. Nobles*, 422 U.S. 225, 238 (1975).

Second, contrary to the Government's position that Mr. Heppner waived any work-product protection by using Claude, Opp. at 30-31, Mr. Heppner's use of Claude is not "inconsistent with the maintenance of secrecy from [Mr. Heppner]'s adversaries." *United States v. AT&T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980).

Third, the Government is wrong in arguing that Mr. Heppner suffered no prejudice from disclosure of his work product prior to trial. Opp. at 31-32. The Government obtained Mr. Heppner's own written analysis of the facts, his anticipated defenses, his cross-examination and impeachment strategies, and his assessment of his exposure. Because Mr. Heppner prepared, revised, and updated those documents over time, the Government received not a static printout but his evolving account of the events and his mental impressions about them. No court can reconstruct whether or how the government's months of advance access to the AI Documents shaped its witness preparation, exhibit selection, examination strategy, or closing themes. *See United States v. Levy*, 577 F.2d 200, 208–09 (3d Cir. 1978). And finally, the government's possession of the AI documents affected Mr. Heppner's decision of whether to testify because it created the risk that he would be impeached by his own protected work product about the case.

### C.       Errors in Evidentiary Rulings Entitle Mr. Heppner to a New Trial.

#### 1.       The Court's Refusal to Admit Key Evidence Warrants a New Trial.

The Court's exclusion of key defense evidence warrants a new trial. The Government argues that the sixteen exhibits identified in the defense's May 1 and May 3 letters were correctly excluded, Opp. 32-33, but each of those exhibits was authentic, relevant, and central to Mr. Heppner's ability to rebut the Government's claims that his relationship with HCLP was concealed. Nor does the Government's overarching argument that the exhibits "were either not sent to witnesses who testified or the witness did not recall receiving the exhibits," Opp. 32-33, justify their exclusion. These exhibits were not offered for their truth, but for the non-hearsay

7

purpose of showing what information Mr. Heppner actually provided to Paul Capital and GWG, and the effect that information had on the recipients.

The Government's arguments regarding Hinkle Y and Schwed A fail for similar reasons. As to Hinkle Y, the Government contends the exhibit was redundant of Mr. Hinkle's testimony, but Mr. Hinkle gave only equivocal testimony that he "believe[d] there was a document in 2002 to that regard"—that Timothy Harmon was appointed independent trustee.  Tr. 577:10. Hinkle Y was necessary to establish directly, through a contemporaneous notarized instrument, that Mr. Heppner had appointed Timothy Harmon, a Harmon Family descendant, as independent trustee. *See* Mot. 30. The admission Schwed A would have directly contradicted Mr. Schwed's testimony that he did not understand that the senior lender was Mr. Heppner. Tr. 1350:10-12, 1386:22-25.

Finally, the Court's refusal to admit the Paul Capital transaction agreement (DX-3) was particularly prejudicial. That transaction agreement established the basis for the $141 million loan from HCLP to Beneficient and mandated that several documents be delivered that showed Mr. Heppner's control over HCLP. This evidence is relevant to rebut evidence admitted by the Government suggesting that the loan was fabricated or not real. *See, e.g.*, Tr. at 432:12-433:05, 437:03-12, 490:05-490:25. It is also relevant to show that Paul Capital received and reviewed the tax opinion showing Mr. Heppner's control over HCLP.

### 2. The Court's Limitation on Impeachment Warrants a New Trial.

Mr. Heppner sought to offer Mr. Schnitzer's testimony, not for its truth, but to show Mr. Stein's bias against Mr. Heppner. That evidence did not have "scant relevance." Opp. at 34. Mr. Stein was the Government's first witness, and the defense had opened on a bias theory. Tr. 33:10-34:1. When Mr. Stein was asked about that bias on cross, he affirmatively denied it, Tr. 104-105, making Mr. Schnitzer's testimony not cumulative but the sole means of rebutting Mr. Stein's denials with extrinsic evidence.

### 3. The Court's Admission of the Government's Improper Summary Chart Warrants a New Trial.

Rule 1006 permits a summary only to prove the content of "voluminous admissible

writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006(a). The Government does not contest that GX 982's underlying seventy-five exhibits could be conveniently examined at trial. *See* Mot. 33; *see also Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 190 (S.D.N.Y. 2008) (admission under Rule 1006 is generally inappropriate where content is "relatively straightforward"). Nor does the Government contest that GX 982 compiled excerpts from approximately thirty percent of all admitted exhibits, functioning as a summary of the Government's case rather than a summary of voluminous records. *See* Mot. 33-34. The Exhibit should have been excluded.

### 4.    Admission of Voluminous Wealth Evidence Was Improper.

The Government mischaracterizes Mr. Heppner's objection to the voluminous wealth evidence. *See* Mot. 34-35. Mr. Heppner does not argue that no such evidence should have been admitted; Mr. Heppner argues that the sheer volume was error, especially where such evidence dwarfed what the Government offered about GWG's Special Committee and alleged misrepresentations made to it. *See id.* The Government's response that this evidence had "self-evident" relevance because it traced the "movement of funds," Opp. 37, misses the point: the objection is to volume, not tracing. The imbalance between the amount of wealth evidence versus evidence of Mr. Heppner's alleged misrepresentations reflects a "persistent appeal to class prejudice," *United States v. Stahl*, 616 F.2d 30, 32–33 (2d Cir. 1980), which is improper.

### 5.    A Material Variance Warrants a New Trial.

There was a material variance between the indictment and the evidence, and Mr. Heppner did not have notice of the theories that broadened the Government's case. *See* Mot. 35-37. The Government attacks *Sakoc*, Opp. 39, but Mr. Heppner cites *Sakoc* for its rule, not its application: substantial prejudice arises where a defendant could not have known from the indictment what theories the Government would advance such that he "might have chosen a different trial strategy." *United States v. Sakoc,* 115 F. Supp. 3d 475, 487-88 (D. Vt. 2015).

The topics the Government developed at trial, including false statements about the Harmon family, the composition of the family office expenses, and Mr. Heppner's statements at the April

15, 2021 SEC meeting, are neither charged in the indictment nor telegraphed in the Government's motions *in limine* or opposition to the motion to dismiss. The indictment does not once mention the Harmon family or Paul Capital, nor does it reference any SEC meeting. *See* ECF 3. Yet the Government developed each of these topics through trial testimony from witnesses, including Mr. Hinkle and Mr. Tatman. *See* Mot. 36-37. Because Mr. Heppner had no notice of these theories, he could not prepare to meet them, and he was prejudiced as a result.

### 6.    Unnoticed 404(b) Evidence Warrants a New Trial.

The Government attempts to minimize Mr. Heppner's Rule 404(b) arguments as "modest" and confined to "a few lines in a three-week trial." Opp. 39-40. But that framing sidesteps the purpose of Rule 404(b)'s notice requirement, which is "to reduce surprise and promote early resolution" of admissibility challenges. Fed. R. Evid. 404(b) advisory committee's note. The volume of testimony ultimately elicited does not measure the harm from lack of notice.

As to Mr. Hinkle, the Government's assurance that it did not argue tax evasion to the jury in closing, Opp. 37, does not cure its failure to give pretrial notice. By the time the Government's non-reliance became clear, the jury had already heard that Mr. Heppner "didn't want to create a tax liability for the income," Tr. 404:15-22, an implication Rule 404(b) is designed to prohibit.

As to Mr. Tatman, the Government argues the testimony was admitted "not under Rule 404(b), but as a 'necessary predicate'" for Count Five. Opp. 40. But Rule 404(b) turns on whether the evidence concerns "other crimes, wrongs, or acts," not on how the Government labels it. Mr. Tatman's testimony about Mr. Heppner's April 2021 statements to the SEC was offered to establish consciousness of guilt, Mot. at 38, and consciousness-of-guilt evidence about uncharged conduct is quintessentially 404(b). Mr. Heppner was denied the opportunity to resolve these questions pretrial, was surprised at trial, and was prejudiced as a result.

### CONCLUSION

Mr. Heppner respectfully requests that the Court acquit him of all charges or grant him a new trial because of the manifest injustice resulting from the numerous errors at trial.

Respectfully submitted,

Dated: August 7, 2026

/s/ *Ben A. O'Neil*

Benjamin A. O'Neil
Robert Zink
John ("Fritz") Scanlon
Clare Reardon
Nithya Pathalam
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 13th Street NW, Suite 600
Washington, DC 20005
(202) 538-8151
benoneil@quinnemanuel.com
robertzink@quinnemanuel.com
fritzscanlon@quinnemanuel.com
clarereardon@quinnemanuel.com
nithyapathalam@quinnemanuel.com

Christopher J. Clore
295 5th Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
christopherclore@quinnemanuel.com

*Counsel for Defendant Bradley Heppner*

11